On Motion to Dismiss Appeal, decided September 30, 1913.

On the Merits, argued October 15, decided October 21, 1913.

# STATE EX REL. *v.* OLCOTT.

(135 Pac. 95: 135 Pac. 902.)

**Appéal and Error—Notice of Appeal—Notice in Open Court.**

1. Under Section 550, L. O. L., providing that a party may give notice of appeal in open court at the time judgment is rendered, or thereafter by serving such notice upon all adverse parties, the plaintiff in an action against two defendants, in which the judgment is for the defendants, may appeal from the judgment as to one of such defendants by giving notice of such appeal in open court, without serving notice on the other, even though the other may be an adverse party to the appeal, since all the parties to the action are bound to take cognizance of the notice given in open court.

**Evidence—Burden of Proof—Presumptions—Weight.**

2. The referendum law provides that it shall be a crime for a person to intentionally sign a referendum petition twice. Section 799, subdivisions 1, 25, L. O. L., provide that identity of person is presumed from identity of name and that a person is innocent of crime or wrong. *Held,* that these presumptions balance each other as to signatures attached to a referendum petition, so that the burden is on plaintiff, claiming that certain signatures were erroneous as being double signatures of the same person, to prove by other testimony that the same person in fact signed the petition more than once.

**Statutes—Referendum Petition—Signatures—Illegibility.**

3. Where the genuineness of signatures attached to a referendum petition was not attacked, the signatures could not be objected to for illegibility.

**Statutes—Referendum Petition—Qualifications of Signers—Registered Voters.**

4. Under the Constitution providing that the power of referendum may be exercised either by petition signed by 5 per cent of the legal voters or by the legislative assembly, it is not essential to qualify signers of such petition that they be registered voters.

**Statutes—Referendum—Defects in Petition.**

5. Under Section 3473, L. O. L., providing that the forms given for the right of referendum are not mandatory and if substantially followed shall be sufficient, disregarding clerical and technical errors, mistakes due to absence of street addresses and clerical differences between the names in the affidavits of verification and the signatures to the petition are not fatal.

**Evidence—Presumptions—Referendum Petition—Sufficiency.**

6. It is the duty of the Secretary of State in the first instance, in his official capacity, to determine by an inspection of a referendum

petition whether the signatures are genuine and regularly authenticated, and, as it is to be presumed that he has performed his duty properly, his conclusion will not be interfered with on a mere inspection of the petition.

From Marion: WILLIAM GALLOWAY, Judge.

En Banc.   Statement by MR. JUSTICE BEAN.

This is a suit by the State of Oregon, on relation of Gale S. Hill, against Ben W. Olcott, Secretary of State, and Wilfred E. Farrell.   From a decree in favor of defendants, the plaintiff appeals as to the defendant Olcott.   The respondent by his attorney moves to dismiss this appeal, on the ground that this court has no jurisdiction herein, for the reason that the notice of appeal was not served upon defendant Wilfred E. Farrell, an adverse party.          MOTION DENIED.

*Mr. Andrew M. Crawford,* Attorney General, and *Mr. James W. Crawford,* Assistant Attorney General, for the motion.

*Mr. Gale S. Hill,* District Attorney, and *Mr. Ernest R. Ringo, contra.*

MR. JUSTICE BEAN delivered the opinion of the court.

The decree appealed from, which was rendered September 4, 1913, and the notice of appeal given in open court, are as follows: "It is considered, ordered, and decreed that the suit be and the same hereby is dismissed, and that neither party recover of and from the other his costs and disbursements in this case. Whereupon the plaintiff gives notice in open court of appeal to the Supreme Court as to defendant Ben W. Olcott."

Plaintiff contends that the defendant Farrell is not a necessary party to the suit, nor an adverse party within the meaning of the law.   Section 550, L. O. L.,

provides that a party to a judgment or decree desiring to appeal therefrom, or some specified part thereof, may by himself or attorney give notice in open court or before the judge, if the order, judgment or decree be rendered or made at chambers, at the time said judgment, decree or order is made, that he appeals from such decision, order, judgment or decree, or from some specified part thereof, to the court to which the appeal is sought to be taken; and such notice shall thereupon by order of the court or the judge therefor be entered in the journal of the court. When such a notice is given in open court, the adverse parties are required to take cognizance thereof. The notice of appeal, as to the portion of the decree appealed from, is couched in general terms. As we construe this notice, it was given to all the parties to the suit. As to the parties to whom notice was given, the form of the notice, so far as we are advised, is in accordance with the practice that has prevailed since the adoption of the statute permitting notice to be given in open court. The plaintiff, being satisfied with the decree as to W. E. Farrell, and not desiring to appeal therefrom, added the words ''as to defendant Ben W. Olcott,'' signifying that the said appeal was from the decree in favor of defendant Ben W. Olcott, but not from the decree in favor of defendant W. E. Farrell.

Our view upon this question renders it unnecessary to consider at this time whether or not W. E. Farrell is an adverse party within the meaning of the statute requiring notice of appeal to be served on all adverse parties.

Notice having been given to each of the defendants, the court has jurisdiction of the cause, and the motion to dismiss the appeal is denied. All concur.

DENIED.

Argued October 15, decided October 21, 1913.

### ON THE MERITS.

(135 Pac. 902.)

Statement by MR. JUSTICE BURNETT.

This is a suit by the state, on relation of Gale S. Hill, district attorney, to enjoin the defendant, Ben W. Olcott, as Secretary of State, from printing on the official ballot for the special election to be held in November of the present year the ballot title for the referendum of what is known as the Workmen's Compensation Act. It is stated that a petition for the referendum purporting to contain the signatures of 7,086 voters of the state was presented to the defendant in his official capacity; that he refused to file the same until after he had stricken therefrom 610 names which he deemed to be invalid as petitioners; and that as thus amended he has filed the petition and will cause the act to be submitted to the electors at the special election mentioned. The validity of the petition is then challenged in several particulars hereinafter noticed. All the allegations of the petition are admitted by the answer, except those attacking the petition itself, and these are denied. From a decree dismissing the suit, the plaintiff appeals.     AFFIRMED.

For appellant there was a brief over the names of *Mr. Ernest R. Ringo* and *Mr. Gale S. Hill,* with an oral argument by *Mr. Ringo.*

For respondent there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, and *Sargent & Swope,* with oral arguments by *Mr. Crawford* and *Mr. H. K. Sargent.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The evidence in the case is very meager, none being offered by the defendant. Much of it was afterward obviated by a stipulation relating to four signatures of women made by men of their families and another name of a petitioner who resided in Washington, making a total deduction of five. The remainder of the testimony relates to street numbers in Portland. One witness relates, for instance, that on the morning of the hearing he investigated as to certain numbers on streets in the city of Portland and found as an·example that No. 72½ Second Street was the office of a firm of wholesale liquor dealers. No application of this testimony is made to any name appearing on the face of the petition. Another witness testified to what appeared to be numbers on certain maps of the City of Portland made in 1895, but the maps themselves are not in evidence, and the witness did not pretend to speak of his personal knowledge but only of what the maps contained. The testimony offered, aside from the facts stipulated, throws no light on the real question of whether the petitioners gave their addresses correctly. No attack is made upon the genuineness of any signature.

It is stated in the complaint "that 300 of the alleged signers of said petition have knowingly signed said petition twice and said signatures are therefore illegal and void."

1. No testimony is given on this point and we are left wholly to inspection of the petition to determine the question. It is made a crime by the statute for a person to intentionally sign a referendum petition twice. It is presumed that a. person is innocent of a crime or wrong, and likewise identity of person is

presumed from identity of name: Section 799, subds. 1, 25, L. O. L. These presumptions are of equal weight under the statute and in this instance would balance each other, so that, if the plaintiff upon whom the burden of proof rests would prevail, some other testimony must be produced to show that in fact the same person in the instances mentioned signed the petition more than once.

2. It is urged also "that approximately 200 additional signatures on said petition are illegal and void for the reason that they are illegible." There is no standard of excellence in penmanship established by the statute qualifying a voter to sign a referendum petition, and besides, as before stated, the genuineness of the signature is not attacked. The right of a petitioner to order the referendum cannot be made to depend upon the ability or inability of any person to read the signature. Many of our best citizens habitually sign their names in a form illegible to anyone not familiar with the writing, and it would be unreasonable to deny such voters the right of referendum because of their chirographical idiosyncrasies.

It is further contended "that 393 of the names on said petition are either omitted entirely from the verification thereof or are incorrectly given in said verification and said names are therefore illegal and void." Much of this objection depends upon the ability of one examining the petition to read the names, and in nearly all these instances the comparison of the name in the affidavit of verification with the corresponding name on the petition leads to the conclusion that the person writing the affidavit might be correct in his translation of the signature or be innocently misled as to its true reading. It must be borne in mind that signatures are the most difficult of all manuscripts to read because there is no context to aid the reader. Many of these

names objected to under all the plaintiff's allegations also are included in those rejected by the defendant.

3. It is also alleged ''that 4,861 of the alleged signers of said petition are not registered voters of the State of Oregon and are therefore not entitled to vote on said measure and are not valid petitioners.'' The Constitution does not require that petitioners for the referendum of a bill shall be registered voters. It is said: ''The second power is the referendum, and it may be ordered * * either by the petition signed by five per cent. of the legal voters, or by the legislative assembly, as other bills are enacted.'' It has been settled by this court in *Woodward* v. *Barbur,* 59 Or. 70 (116 Pac. 101), that it is not essential that a petitioner for the referendum or initiative of a measure shall be a registered voter. If it be true that the petitioner is a legal voter, he is competent to sign such petitions.

4. Many other hypercritical objections are urged against the validity of the petition. They are too numerous to notice in detail without exceeding the limits of an ordinary opinion. They are based mainly on the absence of street addresses and clerical differences between the names in affidavits of verification and the signature to the petition; but in our judgment they are cured by the saving clause in Section 3473, L. O..L.: ''The forms herein given are not mandatory, and if substantially followed in any petition it shall be sufficient, disregarding clerical and merely technical errors.''

5. Bearing in mind that the verity of the names is not questioned, but only the faults in designation of street residences in the main are urged, we think sufficient is shown on an inspection of the petition to justify the action of the defendant in filing the petition and in his intended certification of the ballot title. We

are much influenced in this conclusion by the fact that it is the duty of the defendant in his official capacity to determine in the first instance by an inspection of the petition whether or not the signatures are genuine and are regularly authenticated. The presumption is that he has performed his duty properly, and we are not disposed to dispute his conclusion on a mere inspection of the petition, and this is substantially all the data afforded us in the investigation.

The decree of the Circuit Court is affirmed.

AFFIRMED.