Argued September 27, affirmed October 27, 1922.

# STATE EX REL. CARSON *v.* KOZER.

(210 Pac. 172.)

**Statutes—Notaries Public Certifying Initiative Petitions must have Actual Knowledge That Signers are Residents and Legal Voters.**

1. Under Section 4098, Or. L., relating to initiative petitions, passed pursuant to Article IV, Section 1a, Constitution, notaries public certifying petitions must have personal knowledge of the residence and postoffice address of the persons whose names are attached, and that they are legal voters of the state and of the county in which they reside, as contemplated by the form of the certificate prescribed thereby.

**Statutes—Secretary of State may be Enjoined from Putting Initiative Measure on Ballot Where Certificate False.**

2. Where it is shown that the seeming regular certification of an initiative petition as required by Section 4098, Or. L., is absolutely false, the Secretary of State may be enjoined from placing the initiative measure on the ballot.

**Statutes — Certificates of Notaries Public and County Clerks not Only Evidence Entitling Initiative Measure to Go upon Ballot.**

3. The certificates of notaries public or county clerks that the signatures on an initiative petition are genuine are not the only evidence which entitles an initiative measure to go upon the ballot, but such evidence as, in the absence of a showing to the contrary, authorizes the Secretary of State to file the petition and cause the measure to be printed upon the ballot.

**Statutes—No Presumption That Signers of Initiative Petition are Legal Voters in Absence of Certificates of Notary Public or County Clerk.**

4. In the absence of a certificate of the county clerk or a notary public that the signatures on an initiative petition are genuine, and that the signers are legal voters, as required by Section 4098, Or. L., the Secretary of State has no right to presume that because a person has signed his name to a petition he is a legally qualified voter, but it is his duty to assume that an uncertified petitioner is not a voter, and to refuse to count his name as a petitioner.

**Statutes—Secretary of State not Permitted to Inquire into Properly Authenticated Initiative Petition.**

5. Where an initiative petition substantially in form and certification as required by Section 4098, Or. L., and not having any indication of fraud or falsity on its face, is presented to the Secretary of State, that officer is not required or permitted to inquire beyond the petition as to its genuineness nor the truth or falsity of the certificate, but he must file the petition and act upon it, unless objection to its genuineness is presented in an action under Section 4099.

**Pleading — Courts Should Invoke Every Reasonable Intendment to Uphold Complaint not Objected to Before Decree.**

6. The Supreme Court should go a long way and invoke every reasonable intendment to uphold the sufficiency of a complaint which was not objected to before decree.

**Statutes—Relator not Required to Go Further After Proving Certificates of Notary Public on Initiative Petition were False.**

7. Where relator in an action under Section 4099, Or. L., to restrain the placing of an initiative measure on the ballot proved that the certificates of the notaries public that the signers were legal voters were false, he destroyed their vitality as evidence, and was not required to produce specific proof as to the lack of qualifications of the signers.

**Statutes—Court will Deny Relief to Put Initiative Measure on Ballot Where Fraud Appears.**

8. Where it appears to the court at any stage of a proceeding under Section 4099, Or. L., to restrain the placing of an initiative measure on the ballot that the real object of a party who was invoking its aid is the perpetration of fraud, the court will of its own motion deny him relief.

From Marion: PERCY R. KELLY, Judge.

In Banc.

For appellant there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, *Mr. W. S. Moore,* Assistant Attorney General, and *Mr. J. A. Benjamin,* Assistant Attorney General, with an oral argument by *Mr. Moore.*

For respondent there was a brief and oral arguments by *Mr. S. S. Johnson* and *Mr. W. S. U'Ren.*

BURNETT, C. J.—On the relation of John H. Carson, District Attorney for Marion County, the State of Oregon filed its bill in equity against the defendant, who is the Secretary of State, alleging, in substance, that an initiative petition purporting to have been signed by 13,448 legal voters was presented to the defendant in his official capacity, for the purpose of submitting to the people an initiative measure relating to the rate of interest on money.

The bill avers that of the number of names signed to the petition, 5,050 were certified by the county clerk of Multnomah County. The remaining 8,398 were not so certified, but were authenticated by the certificates of certain notaries public residing in Multnomah County; that the notarial certificates were false in fact, in this: That none of the notaries, at the time of making his or her certificate, had any personal knowledge that any of the alleged voters whose names were appended to any single sheet of the petition were legal voters of the State of Oregon, or of the county of Multnomah; that none of them had any actual acquaintance with, or had any personal knowledge at the time, that any of the persons whose qualifications were authenticated in that manner had actually resided in the State of Oregon for six months preceding said certification, nor had any of the notaries any actual or personal knowledge of the residence or postoffice address of any person whose signature was thus authenticated. It is further said that the defendant had no means of knowing the authenticity of the signatures except through said certificates, that he was not aware of their falsity and was deceived as to those signatures, and that hence he had procured from the attorney general a ballot title for the measure petitioned for, and was about to and intended to certify the petition and ballot title thereof to the county clerks of the several counties of the state, for printing on the official ballot. The prayer is for an order restraining the defendant from thus transmitting the measure and ballot title.

The answer denies all the allegations of the complaint, except the official character of the relator and the defendant.

After a hearing, the Circuit Court made findings of fact substantially in accordance with the averments of the complaint, and issued a permanent injunction, from which decree the defendant appeals.

1. In speaking of the exercise of the initiative and referendum powers reserved to the people, it is said in Section 1–a of Article IV of the Constitution of the state, that:

"The manner of exercising said powers shall be prescribed by general laws."

In pursuance of this constitutional power, the legislative assembly enacted Section 4098, Or. L., relating to the verification of initiative petitions. Under the sanction of that statute, every sheet of the petition primarily shall be verified by the affidavit of the person who circulated that sheet, to the effect that everyone who signed it did so sign his or her name in the presence of the circulator; and that he believes that each signer stated his or her name, postoffice address and residence correctly, and that each signer is a legal voter of the State of Oregon and of the county in which the petition was circulated. The measure of authenticity, in that instance, is the belief of the circulator. By virtue of the same section, there must be additional authentication, principally by the certificate of the county clerk, based upon his comparison of the signatures on the petition with the signatures of the registration cards, books and blanks on file in his office. As a result of this comparison, he is required to certify that he believes the signatures of named signers, in number according to the fact, are genuine. Ancillary to this means of authenticating signatures, is a method found in a proviso of the section in these words:

"Provided that the Secretary of State shall consider and count such remaining signatures as shall be proved to be the genuine signatures of legal voters. To establish such facts, the official certificate of a notary public of the county in which the signer resides shall be required as to the facts for each of such last named signatures."

The essential part of the form prescribed for such a certificate is this:

"That I am personally acquainted with each of the following named electors whose signatures are affixed to the annexed petition, and I know of my own knowledge that they are legal voters of the State of Oregon and of the county written after their several names in the annexed petition, and that their residence and postoffice address is correctly stated therein."

It is true that the section concludes with the precept that "the forms herein given are not mandatory, and if substantially followed in any petition it shall be sufficient, disregarding clerical and merely technical error."

It must be borne in mind that in the first place the circulator must declare under oath that the signature was appended in his presence. The rest of his connection with the petition depends upon his belief in the truth of the statement of the signer. The principal method of certifying the signatures to the petition lies in the action of the county clerk in comparing them with the signatures on the registration cards. The only other method of certification is made to depend upon the actual knowledge of the notaries public that the signatory electors are legal voters of the State of Oregon. In a sense, the certifying notaries are witnesses, by whom must be proved the authenticity of the signatures. As a condition of their competency, the law requires them to possess

personal knowledge of the facts in question, which measure of competency they must truly declare in their certificates. It is not a matter of their belief merely.

This proceeding is not an exercise of the constitutional right to vote. It is the exercise of the privilege of electors to initiate a measure for the consideration of the people. In express terms the legislature had authority to prescribe the manner of exercising that power. It has done so in the enactment to which reference has been made. The Secretary of State has no right to rely upon any other means of evidence to determine the authenticity of a petition. The legislature has prescribed an exclusive class of evidence by which to prove such authenticity. It would be shocking to common honesty to say that when the fact is shown by appropriate proceedings, the secretary could be compelled to rely upon certificates fair upon their face, but, in fact, false. It goes without saying, that the evidence upon which the officer must act shall be true.

2. It well may be said, indeed, that the defendant would be protected if innocently he acted upon a petition thus certified, when he had no knowledge of its falsity. In the interest of public policy, however, when it is shown that the seeming regular certification is absolutely false, he may be enjoined from acting in pursuance thereof.

In exercising their right of petition, legal voters must respect the laws enacted by legislative power concerning the exercise of the initiative prerogative, and they must attend to it that their petitions are authenticated by truthful statements, under the conditions required by the law. To compel the relator to show that the names authenticated by false certificates were themselves false, or that the signers are

not legal voters, is to ignore the statute of authentication and to inject into the case an irrelevant issue.

The decree of the Circuit Court is affirmed.

AFFIRMED.

RAND, J., concurs in the result of this opinion.

McBRIDE, J., Specially Concurring.—The statement of Mr. Chief Justice BURNETT covers all of the material issues in this case, and with the final conclusion there reached I fully concur, but upon other grounds than those stated in his opinion.

3. I do not believe that the certificates of the notaries public or county clerks are the only evidence which entitles a measure to go upon the ballot, but only such evidence as in the absence of a showing to the contrary authorizes the Secretary of State to file the petition and cause the measure to be printed upon the ballot. This is the clear meaning of Section 4098, Or. L.

4. By requiring (1) the affidavit of the circulator and (2) the certificate of the clerk or of a notary public as to the qualifications of a signer, it is clear that in the absence of those there can be no presumption that a signer of a petition is a legal voter. As the law has required proof of this point for the information of the Secretary of State, and prescribed that these affidavits and certificates shall be necessary to authorize the Secretary of State to determine whether or not a signer is a legal voter, it follows logically that in the absence of these, that officer has no right to assume or presume that merely because a person has signed his name to a petition he is legally qualified to vote. On the contrary, it is his duty to assume that an uncertified petitioner is not

a voter, and to refuse to count his name as a petitioner.

5. I therefore have no hesitation in saying that when a petition complying substantially in form and certification with the requirements of the statute and not having any indication of fraud or falsity on its face, is presented to the Secretary of State, that officer is not required or even permitted to inquire *dehors* the petition as to its genuineness or as to the truth or falsity of the certificate. He must file the petition and act upon it, unless objection as to its genuine character is presented as required by Section 4098, Or. L. (Olson's Comp.). That portion of the section here applicable reads as follows:

"On a showing that any petition filed is not legally sufficient, the court may enjoin the Secretary of State and all other officers from certifying or printing on the official ballot for the ensuing election the ballot title and numbers of such measure."

As shown by the opinion of the Chief Justice, the complaint here is predicated principally upon the fact that 8,398 names upon said petitions were not certified to be upon the registration lists, but bore only the certificate of certain notaries public to the effect that they respectively were personally acquainted with each of the electors whose signature was affixed to the petition and that such notary knew of his own knowledge that each was a legal voter, etc. Thereupon follows the allegation that:

"None of the notaries public, at the time of making his or her aforesaid certificates, was personally acquainted with any of the alleged electors whose names were signed and so certified by him or her on any single sheet of signatures of said initiative petition to be legal voters, and to whose names, residence, postoffice address, and qualifications as legal voters he or she so certified; that none of said notaries

public knew at the aforesaid time of certifying his or her own personal knowledge, or at all, that any of said alleged legal voters and electors whose names were pretended to be signed on any single sheet and certified to by any of said notaries public was a legal voter of the State of Oregon and of the county of Multnomah, and that no one of said notaries public had any actual acquaintance with or knew, or had any personal knowledge, at the time of making any one of said certificates that any of the persons whose legal qualifications as a voter he or she certified as a notary public on any one of said sheets had actually resided in the State of Oregon for six months immediately preceding said signing or certifying, nor had he or she any actual or personal knowledge of the actual residence or postoffice address of any of the persons whose names purported to be signed on said petition, and were so officially certified by him or her to be legal voters of the State of Oregon; that no one of the said notaries public before or at the time of making his or her notarial certificate as above alleged had any other personal acquaintance or actual knowledge of the residence or postoffice address and citizenship, or qualifications for citizenship, of any of the signers on any one of his or her said notarial certificate sheets than was gained by said notary public in the process of soliciting the signatures of said signers on the public streets of the City of Portland, often during the rush of business hours, and that such knowledge as said notary public had on which to base his or her certificate was no more than the usual answer of said alleged signer to the circulator's question: 'Are you a citizen and will you sign this petition?' That in all such cases the circulator and the notary public making said certificate was one and the same person; and that said notaries public as circulators obtained signatures of the alleged legal voters on the aforesaid petition at the rate of from 100 to 300 per day.

"That defendant did not know at the time of receiving said petition, and had no means of knowing whether the aforesaid certificates of said notaries public, or any of them, were true or false, but that

in the performance of defendant's legal duties as Secretary of State defendant was and will be obliged to accept said certificates as true and to file said initiative petition, unless otherwise ordered by this honorable court, although in truth and in fact the said certificates of said notaries public and each and every one of them was false and fraudulent, and defendant was thereby deceived; that, in fact, said initiative petition is not signed or subscribed to by more than five thousand and fifty (5,050) of the legal voters of the State of Oregon, after eliminating therefrom the alleged signatures of the alleged legal voters certified to by the said notaries public, and that for the reasons in this amended complaint set forth, said petition is not legally sufficient for an initiative petition nor for official certification by defendant to the county clerks of the several counties of the State of Oregon, nor for printing on the official ballot of said counties for submission to the legal voters of the State of Oregon at the regular general election to be held on the first Tuesday after the first Monday in November, 1922, or at any other election; that defendant was deceived by said false certificates of said notaries public as to the qualifications as legal voters of eight thousand and three hundred and ninety-eight (8,398) of the alleged signatures written on said initiative petition, and defendant believed said signatures to be written and certified to by said notaries public, and because of his belief in the truth of said official certificates defendant considered and counted as genuine signatures of legal voters of the State of Oregon the whole number of eight thousand and three hundred and ninety-eight (8,398) signatures so certified by said notaries public, in addition to the said five thousand and fifty (5,050) signatures so certified by said county clerk of Multnomah County; and that unless restrained by order of this court said defendant will officially certify the title and numbers of said initiative petition to the county clerks of the State of Oregon, and they will cause the same to be printed upon the official ballot, to be voted on and improved or rejected by the legal voters of the State of Oregon at said general election."

The defendant answered by a general denial and upon the trial the allegations of the complaint were fully established. The court entered a decree enjoining the defendant from certifying the measure so as to enable it to go upon the ballot, from which decree the defendant appeals.

The object of the law is to enable legal voters to initiate a measure, and the provisions respecting the proof necessary to show the right of such voters to take part in placing a measure upon the ballot are for the protection of the public, to the end that no measure not initiated by five per cent of the legal voters shall be foisted upon the ballot. In substance, it prescribes what shall in the first instance be *prima facie* evidence to the Secretary of State of those facts which require him to place the measure upon the ballot, but in its solicitude for fairness in elections the law goes further and provides for a hearing before the court, in which the truth of the *prima facie* showing made to the Secretary of State may be inquired into, and the ultimate fact, the voting capacity of the signers, determined.

In a proceeding of the character last mentioned, the actual qualifications of the signers are to be determined. It is not, in such a proceeding, a question as to what the formal showing before the Secretary of State amounted to in fact, if it was sufficient in form. The Constitution permits any legal voter, whether registered or unregistered, to sign an initiative petition and neither the state nor any citizen of the state is injured by the fact that a voter possessing all the necessary qualifications has not been shown to have possessed them by the technical proof required by the statute. Somewhere along the line it should appear either by direct allegation or necessary implication that the signers were not in fact

legal voters, and in this respect the complaint is at
least indefinite. The only allegation that may be con-
strued as referring to the qualifications of the sign-
ers is contained in these words:

"Although in truth and in fact the said certificates
of said notaries public and each and every one of
them is false and fraudulent and defendant was
thereby deceived."

I am inclined to believe that in the absence of a
demurrer or motion to make more definite and cer-
tain, this allegation will be sufficient after trial to
sustain a decree.

6. The ultimate fact to be proved by the certificate
was that the signers were legal voters. This was
required to be proved by the personal knowledge of
the notary. This personal knowledge is the reason
given for the conclusion reached by the notary; and
an allegation that the certificates were "false and
fraudulent" and that the Secretary of State was de-
ceived thereby might after trial without objection
to the sufficiency of the complaint be taken to include
not only an allegation that the notaries were igno-
rant as to the qualifications of the voters, but that
they falsified in the substantial representation that
the signers were legal voters. The parties went into
court and tried the case upon the theory that the
complaint was sufficient in this respect, and the court
should go a long way and invoke every reasonable
intendment to uphold the sufficiency of a complaint
which was not objected to before decree. Taking this
view, the case stands in this position: The defendant
came into court armed with the presumption created
solely by the notarial certificates, that the signers
were legal voters. It was the duty of plaintiff at
the outset to rebut this presumption by showing that
the certificates were in fact false, and this was done

by showing as rotten a fraud as ever was attempted upon the electorate. It was shown that the notaries practically knew nothing of the qualifications of the .voters and that in some instances the certificates were appended before the petitions were circulated. In fine, the integrity of the certificates and their value as evidence were destroyed and the presumption of qualification of the signers swept away, leaving the persons who presented the petitions without any proof or presumption that they were legal voters. In the absence of such proof and in view of the statute requiring the same before the measure is entitled to go upon the ballot, the presumption is that the signers are not legal voters.

7. The relator, having impeached the certificates and destroyed their vitality as evidence, is not required to go further and produce specific proof as to the lack of qualifications. This was substantially the holding in *State ex rel.* v. *Olcott,* 62 Or. 27, 285 (125 Pac. 303), in which we said:

"In addition to these, we find that the petitions circulated by Thurber, Mathews, Dirk, Wolwein, and Rahles, *alias* Wallace, contain such evidence of forgeries, perpetrated either by the circulators, or with their connivance, that the *prima facie* case made by the affidavits of these circulators in favor of the genuineness of these petitions is overcome, putting the burden of proof upon the defendant to establish the genuineness of each signature; and, as this has not been done, we reject all the signatures on these petitions, amounting in the aggregate to 1,183 names, although it is probable that many names on such petitions are genuine."

8. There is another ground upon which the decree of the Circuit Court should be affirmed, and that is that whenever it appears to the court at any stage of the proceedings that the real object of a party who

is invoking its aid in the perpetration of a fraud, and that the court's assistance is desired to enable him to do an illegal act, the court will *sua sponte* deny him relief.

There is presented here a case in which the agents of the petitioners are seeking by means of false certificates to deceive the Secretary of State into putting a measure upon the ballot. It was not a mere mistake on their part, for in *State ex rel.* v. *Olcott, supra,* we had defined fully the requisites of a valid petition, and in *State ex rel.* v. *Port of Bayocean,* 65 Or. 506 (133 Pac. 85), we had expressly condemned the practice of certifying the residence of a voter on the strength of a mere introduction supplemented by the representations of the signer, so that the circulators and certifiers of these petitions are apparently "sinners against light and knowledge," and the highest considerations of public policy indicate that when they come here with an appeal, of which the favorable result would be to enable them to get a proposed measure upon the ballot by fraudulent means and false certificates, we should promptly and summarily dismiss their appeal.

This case differs from the other case of *State ex rel.* v. *Kozer,* presented with it, in many respects. Although the allegations in the complaint in that case in regard to the qualifications of voters were equally indefinite, there the defendant raised a proper and timely objection by a motion to make the complaint more definite and certain, and upon plaintiff's refusal to comply with the order of the court, the complaint was dismissed, and properly. Here there was no objection to the sufficiency or definiteness of the complaint, and in addition, in the other case the petitioners had no control over the county clerks who, it was alleged, had certified to the genu-

ineness of the names on the petitions involved there, and could not in any way be held accountable for their negligence.

The appeal should be dismissed and the decree affirmed.

BROWN, J., concurs in this opinion.

BEAN, J., Dissenting.—I am unable to concur in the opinion holding that the petition for an initiative measure regularly signed by the requisite number of legal voters of the state and certified to in the form provided for by the statute, is insufficient for the reason that the notaries public who certified to a portion of such signatures did not personally know that the persons whose signatures they so certified to, had resided in the State of Oregon for six months, and were electors.

A petition with 13,448 names, stating that such signers are "citizens and legal voters of the State of Oregon" in the form and certified as provided by statute was filed with the Secretary of State. Five thousand and fifty of the signatures were duly certified by the county clerk of Multnomah County, and 8,398 of the signatures were certified in the form provided by statute, by certain notaries public.

In an attempt to challenge the sufficiency of the petition the plaintiff alleges in the complaint, that each of the respective notaries public who certified to the signatures was not personally acquainted with the persons to whose signatures he certified, and did not know of his own personal knowledge that any of the persons making such signatures "was a legal voter of the State of Oregon and county of Multnomah or that any of the addresses stated in said petition opposite any of such signatures was cor-

rect"; and that therefore such notarial certificates were false.

There is an entire want of any allegation in the complaint that any of the petitioners were not qualified electors of the state and entitled to sign such petition. The main fact certified to by the notaries is that the electors whose signatures are affixed to the petition are legal voters. In order for a certificate to be shown to be false in substance, it must be asserted that the signers are not legal voters.

The Constitution of Oregon, Article IV, Section 1, provides that "not more than eight per cent of the legal voters shall be required to propose any measure by such petition." The Constitution confers the right upon every legal voter of the state to sign an initiative petition. This constitutional right should not be abridged or abrogated by mere matter of form provided by the statute: *Woodward* v. *Barbur,* 59 Or. 70 (116 Pac. 101); *State ex rel.* v. *Dalles City,* 72 Or. 337 (143 Pac. 1127); *State ex rel.* v. *Stewart,* 57 Mont. 397 (188 Pac. 904). The Montana court holds that the legislature of Montana transcended its power in attempting to limit the right of the legal voters to sign an initiative petition. The qualification of signers to such a petition is, that the persons whose signatures are attached are legal voters of the State of Oregon. In order that only qualified electors should sign such petition, and as a means of proving such qualification, the legislature has provided a form of petition with a "Warning—It is a felony for anyone to sign an initiative or referendum petition with any name other than his own, or to knowingly sign his name more than once for the measure, or to sign such petition when he is not a legal voter": Section 4096, Or. L.

Section 4096, Or. L., provides that each sheet of the petition shall be verified by the circulator to the effect every person who signs the sheet signed his or her name in "my presence; I believe * * that each signer is a legal voter of the State of Oregon and county of ——." This section directs that, in addition to the affidavit, the county clerk shall compare the signatures of the electors signing the same with the signatures of the "registration cards, books and blanks on file in his office; shall carefully examine said petition," and certify the result to the Secretary of State. This section further directs:

"Every such certificate shall be *prima facie* evidence of the facts stated therein and of the qualifications of the electors whose signatures are thus certified to be genuine, and the Secretary of State shall consider and count only such signatures on such petitions as shall be so certified by said county clerk to be genuine; provided, that the Secretary of State shall consider and count such of the remaining signatures as shall be proved to be the genuine signatures of legal voters. To establish such facts, the official certificate of a notary public of the county in which the signer resides shall be required as to the facts for each of such last-named signatures. * *

"I, ——, a duly qualified and acting notary public in and for the above named county and state, do hereby certify: That I am personally acquainted with each of the following named electors whose signatures are affixed to the annexed petition and I know of my own knowledge that they are legal voters of the State of Oregon and of the county written after their several names in the annexed petition, and that their residence and postoffice address is correctly stated therein, to wit: (names of such electors).

" * * The forms herein given are not mandatory and if substantially followed in any petition, it shall be sufficient, disregarding clerical and merely technical error."

It will be seen that the statute provides three forms in safeguarding the signing of such a petition by legal voters. These forms are not mandatory and clerical and technical errors should be disregarded The main question is: Are the petitioners legal voters? The forms given are to assist in ascertaining that fact. In a similar case, *State ex rel.* v. *Olcott,* 67 Or. 214, 220 (135 Pac. 95, 135 Pac. 902), it was alleged that 4,861 signers on the petition were not registered voters and not valid petitioners. Mr. Justice BURNETT there said:

"The Constitution does not require that petitioners for the referendum of a bill shall be registered voters. It has been settled by this court in *Woodward* v. *Barbur,* 59 Or. 70 (116 Pac. 101), that it is not essential that a petitioner for the referendum or initiative of a measure shall be a registered voter. *If it be true that the petitioner is a legal voter, he is competent to sign such petitions.*" (Italics by writer.)

We also find in that opinion referring to the signing of the petition twice, the following language:

"No testimony is given on this point and we are left wholly to inspection of the petition to determine the question. It is made a crime by the statute for a person to intentionally sign a referendum petition twice. It is presumed that a person is innocent of a crime or wrong, and likewise identity of person is presumed from identity of name: Section 799, subds. 1, 25, L. O. L. These presumptions are of equal weight under the statute and in this instance would balance each other, so that, if the plaintiff upon whom the burden of proof rests would prevail, some other testimony must be produced to show that in fact the same person in the instances mentioned signed the petition more than once."

In addition to the procedure referred to, when such a petition regular upon its face, contains a sufficient

number of signatures of those who declare themselves
to be legal voters, certified to according to the statute,
the petition may be attacked in court under Section
4099, Or. L., by alleging facts showing that the peti-
tion is not signed by the requisite number of legal
voters.   Such an allegation is absolutely essential
before anyone has a standing in court in opposition
to a petition regular and sufficient upon its face, re-
gardless of the regularity or accuracy of the certifi-
cates attached to the petition.

The statute does not make the certificate of a no-
tary the exclusive or conclusive evidence of the qualifi-
cation of the signers of the petition, but only *prima
facie* evidence thereof, in addition to the certificate
of the county clerk.   Otherwise young legal voters
and others not registered could not sign an initiative
petition except by the grace and knowledge of some
notary public, which is not a constitutional require-
ment of the qualifications of such petitioners.

Section 4099, Or. L., provides in part thus:

"On a showing that any petition filed is not legally
sufficient, the court may enjoin the Secretary of State
and all other officers from certifying or printing on
the official ballot for the ensuing election the ballot
title and numbers of such measure."

A petition is "legally sufficient" if it contains the
names of the requisite number of legal voters, and is
in the form provided by the statute.   That is the only
real question in this case: *State ex rel.* v. *Olcott,* 62
Or. 277 (125 Pac. 303); *State ex rel.* v. *Olcott,* 67 Or.
214, 220 (135 Pac. 95, 902).

In *State ex rel.* v. *Stewart,* 57 Mont. 397 (188 Pac.
904), considering a referendum petition which ap-
peared on its face sufficient, with the requisite number
of signatures of legal voters certified to by county
clerks, when it was impossible for examination and

comparison of the signatures on the petition so as to ascertain whether they were genuine, and where a *prima facie* case was made out by the petition, the constitution and statute of that state being apparently like ours.

Mr. Chief Justice BRANTLY, speaking for the court, said (see page 907):

"This *prima facie* case could not be overcome and the suspension of the amendment to the primary law be made nugatory only by allegation and proof that a sufficient number of signatures to the petition from Wheatland, Treasure, and Glacier counties, or at least to the petitions from two of them, were not genuine to require their exclusion from the count. Assuming that the allegations in the affidavit were sufficiently specific to justify the admission of evidence on this point, that introduced by counsel for the relator did not tend to impeach the genuineness of the signatures attached to any one of the petitions in question. It tended merely to show that the clerks had not technically pursued the directions of the statute in ascertaining the number of legal voters who were entitled to sign the petition. This is not the complaint made by the relator. Even so, we should be slow to reach a conclusion by which any legal voter would be prevented from exercising a clear constitutional right by a mere irregularity in the performance of his duty by a public officer."

As the writer understood the argument of counsel for plaintiff, they do not claim that it is alleged or shown that any of the signatures on the petition are not the genuine signatures of legal voters of the state. It is contended that all that is necessary to defeat the petition is to show that the notaries public were careless and failed to observe the statute in certifying to the signatures. It is not even alleged that the certifying notaries did not believe that the sig-

natures embraced in their certificates were not those of legal voters or that any wrong was intended. The constitutional right of electors to sign such a petition and have their signatures counted should not be thwarted by any careless, ignorant or even willful act of a ministerial officer. To hold the petition insufficient on account of the certificates, is to sacrifice right and substance for form. It is not presumed that in the face of the warning on the petition any person is guilty of the crime of signing the petition when he is not a legal voter.

This case stands upon the principle announced by a majority of this court in the case of *State ex rel.* v. *Kozer*, known as the county clerk case, and heard about the same time.

The petition is legally sufficient upon its face, and has not been assailed by any allegation in the complaint charging that any number of the persons who signed the same are not legal voters. The complaint is insufficient to support the decree. Until a material issue is raised by the pleading we need not be concerned with the question of the burden of proof.

The judgment of the Circuit Court should be reversed.

McCOURT, J., concurs in this dissent.

HARRIS, J.—I dissent from the conclusion reached by the majority of my associates. I agree with substantially all of the reasoning employed by Mr. Justice BEAN, and I concur in the conclusion expressed by him. I do not think that it is necessary in the instant case to decide whether it is competent for the legislature to declare that the validity of signatures subscribed to a petition shall be determined exclusively by the certificates of county clerks and notaries

public when a petition is made the subject of a judicial proceeding; and since it is not necessary to decide that question, I prefer to assume, without deciding, that the legislature can if they choose make such certificates the exclusive evidence. However, I think that the legislature intended that the question of the legality of the signatures subscribed to a petition should in a judicial proceeding be tried and determined according to accepted and established rules of procedure, including the right to introduce any available evidence relevant to the question. The pleadings in the instant case are in all material particulars the same as the pleadings in the case involving the Atlantic-Pacific Highway and Electrical Exposition, sometimes referred to as the county clerk case. In my opinion the fact that one case involves the certificates of county clerks and the other involves certificates of notaries public does not in principle distinguish one case from the other. It is true that county clerks are public officers, but it is also true that notaries public are officers. Indeed, the statute expressly declares that notaries public "shall be considered state officers and shall hold their offices for the term of four years * * ." Section 3175, Or. L.

In the instant case the complaint attacked only the certificates of the notaries public just as in the county clerk case the complaint assailed only the certificates of the county clerks. In my opinion the complaint in the instant case is as fatally defective as the complaint in the county clerk case.