ZINA H. BLACKMER *vs.* MERRICK E. HILDRETH & others.

Suffolk.   January 10, 1902. — March 1, 1902.

Present: HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Elections*, Réquirements as to nomination papers.

The requirements of St. 1898, c. 548, §§ 141, 142, 145, as to the time of filing nomination papers and the certificates thereon, although binding on the officers whose duty it is to prepare and pass upon the official ballot, do not invalidate ballots cast for a candidate nominated by papers filed too late and not properly certified.

PETITION, filed August 13, 1901, for a writ of mandamus to be issued to the selectmen of Petersham commanding them to receive the petitioner as one of their board and commanding Edwin C. Dexter to refrain from acting as a member of that board.

The case was heard by *Barker*, J., who ruled that the informalities in the nomination papers of Edwin C. Dexter would not invalidate his election, and that the petitioner, by making no protest after his signing the certificate on the nomination papers on May 7, 1901, and by participation in the meeting at which Dexter was elected, and by acquiescence in its results, was precluded from maintaining his present petition.

The justice ordered the petition dismissed; and the petitioner alleged exceptions.

*J. W. Corcoran & W. B. Sullivan*, for the petitioner.
*J. B. Warner & A. H. Brooks*, for the respondents.

HAMMOND, J.   St. 1898, c. 548, requires that a nomination paper in the case of an election like this shall be filed as early as the seventh day preceding the election (§ 145), and that at the time it is filed it shall have thereon the certificate of the registrars of voters as to the number of signatures which are names of qualified voters and also shall have annexed to it an oath made by one of the signers thereto verifying the truth of the statements therein contained, with the certificate of the person before whom the oath is taken that he is satisfied that the person to whom the oath is administered is the person signing the paper.   §§ 141, 142.

In the case before us the nomination paper was filed two days late, and a certificate of the registrars was placed thereon and the oath of one of the signers of the paper and certificate respecting it were annexed thereto after the paper was filed but not before the official ballot was made up.   One of the questions is whether the election shall be declared invalid on account of these irregularities.

The justice found as a fact that all parties including the town clerk and the registrars, one of whom was the petitioner, acted without fraud and in good faith.   Dexter's name was placed upon the official ballot and he received at the election a majority of the votes.

Under our system of elections the voter receives at the polls from the election officers an official ballot, of which he does not know and is not expected to know anything except what appears upon its face; and as a rule it is impossible, as in this case, by an inspection of the ballot to ascertain whether or not there has been any irregularity in the preparation of it.   He takes this ballot, sees upon it the names of the candidates, and, having expressed thereon in due form his choice, deposits it in the ballot box.   Thus he duly expresses his will upon the paper prepared and handed to him by the officers of the law appointed for that purpose.   All this he does in good faith.   All this the voters at the election in question did in good faith, and the result was that Dexter received a clear majority of the votes.

It is contended, however, by the petitioner, that the provisions of the election law above recited are mandatory and that as a necessary result the election of Dexter was void.   On the

contrary the respondents contend that in this case there was no such non-compliance with these provisions as to render the election void.

The statute in question deals with the whole subject of elections, from the qualifications of voters to the final ascertainment of their choice. In order that the official ballot may be properly prepared, it provides the manner in which caucus and other nomination papers shall be made up, prescribing with considerable minuteness the details, and it fixes the time within which the papers shall be presented for the ballot as well as the time within which objections to any such paper may be made. §§ 139–146, 148–152. It further provides for the creation of a board charged with the duty of settling all disputed questions of fact arising upon such objections, and " the decision of a majority of the members thereof shall be final." §§ 147, 153. It further provides that nomination papers filed and in apparent conformity with law shall be held valid unless objections are seasonably made thereto. § 146. In the case of towns, the town clerk having before him the undisputed papers and the decision of the proper tribunal upon those to which objection is made prepares the official ballot in accordance therewith, and this is the ballot which the voter finds waiting for him at the polls. It contains the officially declared result of all these preliminary proceedings, but, as we have said before, there is nothing by which the voter can judge whether or not all these proceedings have been regular. As stated by Andrews, C. J., in *People* v. *Wood*, 148 N. Y. 142, 147, " The object of elections is to ascertain the popular will and not to thwart it. The object of election laws is to secure the rights of duly qualified electors and not to defeat them." This must be borne in mind in the construction of such statutes, and the presumption is that they are enacted to prevent fraud and to secure freedom of choice, and not by technical obstructions to make the right of voting insecure. The provisions above recited with reference to the preparation of the ballot are plainly limited and confined to that purpose. They are binding upon the officers for whose guidance and direction they are needed. If it be seasonably objected to a nomination paper that it was not filed within the time required by § 145, or that the provisions of §§ 141 and 142

have not been complied with, it is the duty of the proper board to inquire into and settle the question, and to sustain the objection, if found to be true, and reject the paper. So far as respects their decision these provisions are mandatory. When the decision is made it is final, and a ballot made up in accordance therewith is not thereby made illegal. And in the same way the action of the town clerk, at least in the absence of fraud and corruption, as to the papers to which no objection is made, must be regarded as final so far as respects the ballot which he prepares.

But with the preparation of the ballot the influence of these provisions end. If there be irregularities like those in this case they do not accompany the ballot and taint it in the hands of the voter. This view of the statute gives due weight and scope to the provisions in question, and preserves the sanctity of the right of suffrage and its free and honest exercise. To hold otherwise would be to lose sight of the purpose for which these provisions were made, namely, to provide the method and time for the preparation of the ballot, and would subject our elections to intolerable and perplexing technicalities in no way material to the substantial merits of the controversy or to the freedom and result of the action of the voters. Its natural tendency would be to thwart rather than to secure a true expression of the popular will.

We are aware that the courts of England and Australia are inclined to extend the operation of provisions similar to those in question further than is done in this case, but an examination of the English statute would seem to show that it expressly reserves to the courts a supervision over some of the decisions of the officers respecting the preparation of the ballots, upon a petition questioning the election after it has taken place. St. 38 & 39 Vict. c. 40, § 1. *Regina* v. *Parkinson*, L. R. 3 Q. B. 11. *Mather* v. *Brown*, L. R. 1 C. P. D. 596. *Howes* v. *Turner*, L. R. 1 C. P. D. 670. *Monks* v. *Jackson*, L. R. 1 C. P. D. 683. *Regina* v. *Miller*, 1 Australian Jur. 156.

But, whether that be so or not, we are not inclined to adopt a construction which is so manifestly opposed to the general spirit of our laws and the freedom of our elections as that contended for by the plaintiff.

For some decisions in other States in accordance with the views herein expressed, see *People* v. *Wood, ubi supra, Stackpole* v. *Hallahan,* 16 Mont. 40, and the cases therein cited, overruling in substance the previous case of *Price* v. *Lush,* 10 Mont. 61.

The ruling that the informalities in the nomination paper of the respondent Dexter did not invalidate the election was correct. It becomes unnecessary to consider the other grounds of defence.

*Exceptions overruled.*