H. H. EARL, F. H. MEREWEATHER, A. GREEN-
HALGH, LEWIS JACOBSON and LOUIS AL-
LANT, Contestants and Respondents, v. B. E.
LEWIS, President, and LEIL M. MADSEN, AL-
FRED NEUREN and FRANK BROYLES, Con-
testees and Appellants.

No. 1535.   (77 Pac. 235.)

1.  Elections: Contests: Certificate of Nomination: Failure
     to File: Effect: Duty of Clerk.
     Under Rev. St. 1898, sections 824, 828, requiring certificates
        of nomination to be filed with the town clerk not less than
        15 days before the election, and declaring all certificates
        valid unless written objections are made, and section 836,
        requiring the clerk to print on the ballot the name of every
        candidate whose nomination has been certified, when a cer-
        tificate of nomination is in legal form, the clerk, in the ab-
        sence of objection, must place the candidate's name on the
        official ballot, though the certificate was not filed in the
        required time.

3.  Same.
     Where a person in charge of the certificates of nomination of
        candidates by a political party was prevented from filing
        them with the town clerk because of his absence and his
        office being closed, they may be regarded as filed on the
        day they were presented.

2.  Same: Ballot: Validity: Irregularities.
     Under Rev. St. 1898, sections 846-849, requiring the judges to
        furnish the voter the official ballot, which after being prop-
        erly marked by the voter shall be deposited in the ballot
        box and counted for the candidate designated, the voter
        can only use the ballot furnished, and its validity cannot
        be denied because of irregularity in its preparation.

4.  Same: Registration: Failure of Register to Act: Right
     to Vote.
     Under Rev. St. 1898, sections 800, 821, prescribing the method
        of registration, and providing that no person shall be per-
        mitted to vote without having registered, the failure of the

register to act does not deprive the legal voter, who has properly applied for registration, of the constitutional right to vote.

5. Same.
   Where a register fails to act on a voter's application for registration, the voter is not required to resort to mandamus to compel him to act, nor to an action against him for damages.

6. Same.
   Under Act. Cong. May 31, 1870, c. 114, section 3, 16 Stat. 140, providing that a person offering to perform any act entitling him to vote, and otherwise qualified, shall be entitled to vote as if he had performed the act, where the requirements were not performed by persons who applied for registration they were not entitled to vote at the election.

(Decided June 25, 1904.)

Appeal from the Seventh District Court, Carbon County. —*Hon. Jacob Johnson,* Judge.

An election contest instituted in pursuance of chapter 9, title 18, Revised Statutes 1898. From a judgment in favor of the contestants, the contestees appealed.

AFFIRMED.

*Messrs. Weber & Braffet* and *W. H. Frye, Esq.,* for appellants.

*Hon. M. A. Breeden,* Attorney-General, and *Hon. W. R. White,* Deputy Attorney-General, for the respondents.

BASKIN, C. J.—This is an election contest, instituted in pursuance of chapter 9, tit. 18, Revised Statutes 1898.

It appears from the evidence, and also from the findings of fact, that on the nineteenth day of October, 1903,

the said H. H. Earl was duly nominated by the Republican party as a candidate for the office of president, and his co-contestants were duly nominated, by said party, as candidates for the offices of trustees, of the town of Scofield, to be voted for at the ensuing general town election for president and trustees of said town, to be held November 3, 1903. That each of the contestants was qualified to fill the office for which he was so respectively nominated. That after the nominations were made, and late in the same day, a certificate of said nomination, in due and legal form, was, on behalf of said party, taken to the office of the town clerk of Scofield, for the purpose, as required by sections 824 and 828 of the Revised Statutes of 1898, of filing the same with said clerk, but as the office of the clerk was locked and no one in charge thereof, admission to said office was not obtained, whereupon the person who had the certificate in charge inclosed the same in a sealed envelope, with postage prepaid, and deposited it in the United States postoffice at Scofield, directed to the town clerk, and it was received by him on the next day, October 20. That neither the objection provided for in section 832, or any objection whatever, to the legality of the certificate, was made to or filed with the town clerk. "That the election was duly called, and three judges of election were appointed, and sworn according to law, to conduct said election on the day and at the place designated. That voting booths were erected, and stationery, official ballots, and ballotboxes were furnished by said town board, but it furnished no registration list of voters. That an effort was made to secure a registration list, or a copy of the registration list, but without success. That while this was in progress legal voters appeared, to the number of ten or more, and demanded the right to vote. That said judges who had been appointed by the said town board declined to receive the votes of the electors who were there, assigning as a reason that they had no registration list. A list was produced called a 'registration list,' which the court

finds to be a registration list of the precinct of Scofield. That the precinct of Scofield is larger than the town of Scofield. That the list produced was the precinct list, not the town list; that it contained all the electors of the town, as well as others not electors of the town. That, upon the judges of the election refusing to receive votes of the electors who were then present and demanding the right to vote, the electors so present between the hours of 9 and 10 o'clock in the forenoon of that day proceeded to elect three other qualified judges to conduct the said election, who were of the same political parties as those judges who had refused to act, and they were sworn in due form of law and proceeded to hold an election, procuring a ballotbox, and using the registration list, heretofore mentioned as a guide to determine who were the legal voters of the town. That they continued to hold an election until the time for closing, when they counted the ballots received, amounting to ninety-three, and duly made return to the clerk of said town board, and filed the same with the said clerk. That the first judges appointed, who had refused to receive ballots, continued to occupy their places, but declined to receive votes until some time in the afternoon of the day of election, between 3 and 4 o'clock, when they made up their minds as to their mode of procedure, but that no votes were received by them until some time between 6 and 7 o'clock in the evening, and then only five votes besides their own were received by them from persons to whom they administered an oath. It does not appear what the form of the oath was, nor in what manner it was administered; but they were sworn to something, and then deposited their ballots. The polls were closed, and both sets of judges made and filed returns with said clerk. On the following Monday, November 9, 1903, the incumbent president and trustees of Scofield, as a canvassing board, canvassed the returns of both sets of judges, and found that the first judges appointed had received eight ballots, all of which were for said canvassers, and that the other judges had received seventy-six ballots for

H. H. Earl, seventy-one each for F. H. Mereweather and
Lewis Jacobson, seventy for A. Greenhalgh, and sixty-
three for Louis Allant, they being the candidates nomi-
nated by said party. That thereupon the said canvass-
ing board declared themselves elected to the various of-
fices, and ignored the other ballots, and directed certifi-
cates of election to be issued to themselves. That all
the persons who voted at said election were legal voters,
and were registered and voted at the last preceding town
election of the town of Scofield. That the registration
agent refused to act, and failed to revise and to publish
or correct the last preceding registration list. That at
least seventy to seventy-six legal electors desired to
vote, but were not registered, and that six of them had
applied for registration, but the registry agent refused
to act.''

Sections 824, 828, Revised Statutes 1898, require
certificates of the character of the one involved in this
case to be filed with the clerk of the town not more
than thirty nor less than fifteen days before the election.
Section 832 provides that: ''All certificates of nomina-
tions which are in apparent conformity with the pro-
visions of this chapter [which is chapter 1, tit. 18] shall
be deemed to be valid unless objection thereto shall be
duly made in writing within three days after the filing
of the same. In case such objection is made, notice
thereof shall forthwith be mailed to all the candidates
who may be affected thereby, addressed to them at their
respective postoffice addresses, if any, or places of resi-
dence as given in the certificate of nomination. The of-
ficer with whom the original certificate was filed shall
pass upon the validity of such objection, and his decis-
ion shall be final; provided, that such officer shall de-
cide such objection within at least forty-eight hours
after the same is filed, and any objection sus-
tained may be remedied or defect 'cured upon the
original certificate, or by an amendment thereto, or
by filing a new certificate within three days after such
objection is sustained.'' Appellants' counsel contend

that provisions of the statute relating to the time of filing the certificate are mandatory, and, as it was not filed within the time prescribed, it was an absolute nullity, and that the town clerk had no right to place the names of said nominees on the official ballot, and that the votes cast for them should not have been counted. Section 793 reads as follows: "The provisions of this title [18] shall be liberally construed, so as to carry out the intent of this title, and of political parties, nominees, and others in proceeding under this title."

The question here involved arose in Blackmer v. Hildreth, 181 Mass. 29, 63 N. E. 14. In that case section 145 c. 548, p. 588, of the Massachusetts statutes of 1898, required nomination papers to be filed as early as the seventh day preceding the election, but the papers involved therein were filed two days late. Section 146 of said statutes provided that such papers filed in apparent conformity with law should be held valid, unless seasonably objected to. No objection to the papers was made, and the names of the candidates set out in the papers were placed upon the official ballot. The petitioner contended that the provisions of the election law involved were mandatory, and, as a necessary result the election of Dexter, who received a clear majority of the votes, was void. The court held that "the requirements as to the time of filing nomination papers and the certificates thereon, although binding on the officers whose duty it is to prepare and pass upon official ballots, do not invalidate ballots cast for a candidate nominated by papers filed too late and not properly certified." In the opinion it is said: "The object of elections is to ascertain the popular will, and not to thwart it. The object of election laws is to secure the rights of duly qualified electors, and not to defeat them. This must be borne in mind in the construction of such statutes, and the presumption is that they are enacted to prevent fraud and to secure freedom of choice, and not, by technical obstructions, to make the right of voting insecure. The provisions above recited with reference to the prepara-

tion of the ballot are plainly limited and confined to that purpose. They are binding upon the officers for whose guidance and direction they are needed. If it be seasonably objected to a nomination paper that it was not filed within the time required by section 145, or that the provisions of sections 141 and 142 have not been complied with, it is the duty of the proper board to inquire into and settle the question, and to sustain the objection, if found to be true, and reject the paper. So far as respects their decision, these provisions are mandatory. When the decision is made, it is final, and a ballot made up in accordance therewith is not thereby made illegal. And in the same way the action of the town clerk—at least, in the absence of fraud and corruption—as to the papers to which no objection is made, must be regarded as final so far as respects the ballot which he prepares.'' And in support of the opinion, attention is specially directed to Stackpole v. Hallahan, 16 Mont. 40, 40 Pac. 80, 28 L. R. A. 502, which in substance overrules the previous case of Price v. Lush, 10 Mont. 61, 24 Pac. 749, 9 L. R. A. 467, cited by appellants' counsel in the pending case.

In 16 Mont. 54, 40 Pac. 84, 28 L. R. A. 502, it is said: ''The law is 'mandatory,' in the sense that it demands and requires the county clerks, in the preparation of the 'official ballot,' to strictly comply with all its provisions, but not in the sense that a voter's right to exercise his elective franchise will be lost because of some technical mistakes of the county clerk in printing the names of candidates upon the ballot. Such a construction of the law would not only render the election invalid on account of an honest mistake of a county clerk but would open the door to the gravest fraud. It would place the power in the hands of a dishonest officer to disfranchise the voters of his county, as well as cause the defeat of any particular candidate.''

In Allen v. Glynn, 17 Colo. 338, 347, 29 Pac. 670, 673, 15 L. R. A. 743, 31 Am. St. 304, it is said: ''It may be said that all such provisions of such laws are manda-

tory in the sense that they place a duty upon those who come within their terms. But it does not follow that an election should be invalidated because of every departure on the part of public officers from the terms of the act. Bowers v. Smith, (Mo. Sup.) 17 S. W. 761."

In the case of Schuler v. Hogan, 168 Ill. 369, 48 N. E. 195, as in the case of Blackmer v. Hildreth, supra, no objection was made to the certificate of nomination. In the former case (page 377, 168 Ill., page 198, 48 N. E.), it is said: "Where a candidate for public office makes no objection to the certificate of nomination of his opponent before the election, when the statute provides for the time and mode of presenting such objections, he should be regarded as having waived all objections that may exist to the presence on the official ballot of any names of nominees not properly entitled to be there. Bowers v. Smith, 111 Mo. 45 [20 S. W. 101, 16 L. R. A. 754, 33 Am. St. 491]; Allen v. Glynn, 17 Colo. 338 [29 Pac. 670, 15 L. R. A. 743, 31 Am. St. 304]."

In the case at bar no objection was made by the contestees, who claim to have been legally elected, either to the certificate or the official ballot. That it was the mandatory duty of the town clerk, under the circumstances, to place the names of the nominees of said party upon the official ballot, is apparent from the following provisions of section 836, Revised Statutes 1898: "It shall be the duty of the recorder of any city or clerk of any town, except as otherwise provided by law, to provide printed ballots for every election of public officers in which the voters or any of the voters, of such city or town participate; and to cause to be printed on the ballot the name of every candidate whose nomination has been certified to, or filed with, such city recorder or town clerk, in the manner provided by law." When objection is made and a certificate of nomination is set aside, under the provisions of section 832, the town clerk is relieved from the duty of placing the nominees named in the certificate upon the official bal-

lot; but except in such instances there is no provision of law which exempts a town clerk, when nominations are certified to him in due form, from performing the duty, notwithstanding the certificate may not have been filed in the time prescribed. That the certificate of the contestants' nomination was in due and legal form, and was received by the town clerk one day less than the time provided by the statute, is not controverted; therefore, under the provisions of section 836, it became the duty of said clerk, in the absence of objections, to place the candidates nominated by the Republican party upon the official ballot. Under section 846, each voter at the polls is given, by one of the election judges, only one official ballot, and after it is marked by the voter as required by section 847, and the steps taken as required by section 849, it is deposited in the ballotbox by the voter. Section 848 provides that the "ballots thus marked shall be counted for the candidates designated." The voter, under these provisions, can only use the ballot given him, and is not expected to know anything except what appears upon its face, and "cannot ascertain therefrom whether or not there has been any irregularity in its preparation." To deny the validity of such ballots, and withhold the offices from the candidates receiving a majority of the votes, would, in many instances, defeat the public will. To do so, the election law, instead, as intended, of being an efficient aid to the securement of a fair expression at the polls, would render it deceptive and well calculated to mislead and disenfranchise honest voters. Again, independently of the foregoing considerations, as it appears that the party in charge of the certificate on behalf of the party which made the nominations in question, attempted to file the certificate in time, to-wit, October 19, but was prevented from doing so by reason of the absence of the town clerk, and his office being closed, we are of the opinion that the certificate should be considered as filed on that day.

Counsel for contestees also contend that the pro-

visions of the statute as to registration are mandatory, and that the failure to revise the list and register those entitled to register was fatal, and rendered the election void. It is clear that the provisions of the statute as to the register are mandatory in the sense that, if he refuses or neglects to perform his duties, he may be compelled by mandamus to do so; but it does not follow that his refusal or failure to act defeats the ensuing election, or deprives the qualified voter who has made proper application for registration from exercising his constitutional right to vote thereat. Section 2, art. 4, of the Constitution, is as follows: "Every citizen of the United States, of the age of twenty-one years and upwards, who shall have been a citizen for ninety days, and shall have resided in the State or Territory one year, in the county four months, and in the precinct sixty days next preceding any election, shall be entitled to vote at such election except as herein otherwise provided." The Constitution is silent on the subject of registration. It is fundamental that a right of a citizen guarantied by the Constitution cannot be abridged, impaired, or taken away, even by an act of the Legislature. Notwithstanding our Constitution has fixed the qualification of voters, the Legislature may rightfully enact a registration law which merely regulates the exercise of the elective franchise, and does not amount to a denial of the right itself, and does not abridge or impair the same. Section 821, Revised Statutes 1898, provides that: "No person shall hereafter be permitted to vote at any general, special, municipal, or school election, without having been first registered within the time and in the manner and form required by the provisions of this chapter." Section 800 provides that: "It shall be the duty of the registry agents, when called upon to do so at their respective offices, and not elsewhere, at any time between the hours of eight o'clock a. m. and nine o'clock p. m. of the fourth Tuesday and of the fourth Wednesday and of the third Tuesday and of the first Tuesday,

and in presidential years, of the first Wednesday, prior to any general election, to receive and register names of all persons applying for registration, who, on election day, will be legally qualified and entitled to vote in that election district, according to the provisions of law under which such election may be held.'' In passing section 821, it is evident that the Legislature did not anticipate a case so extreme and improbable as the refusal of a sworn register to act; on the contrary, the section was passed in contemplation that the register would perform his duty, and that legal voters, properly applying for registration, would not be denied the right. There is no provision of the registration act which warrants the conclusion that it was the intention that the legal voter who has properly applied for registration, but who has been deprived of the right by the failure of the register to act, should, by reason of such failure, be also deprived of his constitutional right to vote at the polls. We are therefore of the opinion that a failure of a register to act neither vitiates the registration law, nor deprives the legal voter, who has properly applied for registration in the manner required by section 800, of his constitutional right. In other words, when the legal voter has done all that the law requires at his hands, and his failure to be registered was the fault of the registration officer, ''upon the well-settled principle of law that the offer to perform an act which depends for its performance upon the action of another person, who wrongfully refuses to act, is equivalent to its performance'' (McCrary on Elections, section 137), his acts in attempting to register should be taken as equivalent to registration, and upon tendering his ballot at the polls, and showing that he possesses the qualifications prescribed by the Constitution, and also the cause of his failure to register, he should be permitted to vote. The claim that the remedy of the voter in such cases is either by mandamus to compel the register to act, or by an action against the register for damages, is not tenable, because to require

the voter to resort to the remedy of mandamus would be to add onerous conditions not required by the Constitution, and a resort to an action for damages would not prevent registration officers from corruptly defeating the will of the majority of qualified voters by intentionally failing to act.

While the right of a person having the constitutional qualifications of a voter cannot be impaired, either by the Legislature or the malfeasance or misfeasance of a ministerial officer, the voter himself may waive the exercise of the right, and he does so whenever he stays away from the polls, or fails to offer to vote at the polls, or neglects to properly apply for registration. It appears in the case at bar that the names of the persons who cast their ballots at the election were legal voters, and were registered and voted at the last preceding town election. Under the provisions of section 816, as there was no election for President of the United States in the year 1903, the previously registered voters were not required to again register in that year; only the voters who had not previously registered were required to do so. It does not appear that either of the six voters who applied for registration offered to vote at the polls, nor does it appear that either of the seventy-six legal voters who desired to vote applied for registration or offered to vote. By the third section of the Act of Congress approved May 31, 1870, it is provided: "That whenever, by or under the authority of the Constitution or laws of any State, or the laws of any Territory, any act is or shall be required to be done by any citizen as a prerequisite to qualify or entitle him to vote, the offer of any such citizen to perform the act required to be done as aforesaid shall, if it fail to be carried into execution by reason of the wrongful act or omission of the person or officer charged with the duty of receiving or permitting such performance, or offer to perform, or acting thereon, be deemed and held as a performance in law of such act, and the person so offering and failing as aforesaid, and being otherwise

qualified, shall be entitled to vote in the same manner and to the same extent as if he had in fact performed such act." Act May 31, 1870, c. 114, 16 Stat. 140. After quoting this provision Mr. McCrary, in his work on Elections, at page 104, says: "It is undoubtedly necessary that a person who, having been refused registration, seeks to have his vote counted under this statute, should prove that he actually and personally applied to the proper board or officer for registration, and offered to make such proof, or perform such acts, as the law required of him; that he was in fact legally qualified to vote and entitled to registration, and that registration was refused. In other words, it must appear that the voter did, or offered to do, all that the law required at his hands, and that his failure to be registered was the fault of the board or officer of registration. Nor is it enough that he demanded registration of the proper officer or board and was refused. It must also appear, before his vote can be counted as if cast, that he offered his vote at the proper time and place, or used proper diligence in endeavoring to do so."

As it does not appear in the case at bar that these requirements were performed by either of the six persons who applied for registration, or by either of the seventy-six persons before mentioned, neither of them were entitled to vote at said election. And as it appears that the contestants received a majority of the legal votes cast at said election, the judgment of the lower court in favor of the contestants is affirmed, with costs.

BARTCH and McCARTY, JJ., concur.