Argued September 22, demurrer sustained and writ dismissed September 30, 1924.

## DAN KELLAHER v. SAM A. KOZER.
(228 Pac. 1086.)

Statutes—Secretary of State may Count Only Signatures on Initiative Petition Which have Been Certified.

1. Under Constitution, Article IV, Section 1, and Or. L., Title 28, Chapter 13, and under Section 4098, the Secretary of State may consider and count on an initiative petition only those signatures which have been certified either by county clerk or notary public.

Constitutionality of principle of initiative and referendum, see notes in 11 Ann. Cas. 920; Ann. Cas. 1918D, 604; 50 L. R. A. (N. S.) 195; L. R. A. 1917D, 17.

Statutes—Statute Requiring Signatures to Initiative or Referendum
      Petition to be Certified by County Clerk or Notary Public Held
      Valid.

2. Under Constitution, Article IV, Section 1, concerning the in-
itiative and referendum, Section 4098, Or. L., requiring signatures to
initiative and to referendum petitions to be not counted unless cer-
tified as genuine by a county clerk or a notary public, was a proper
exercise of legislative power, and is not contrary to the constitu-
tional provision that not more than eight per cent of the legal
voters shall be required to propose an initiative measure.

Statutes—Statute Held not to Deprive Unregistered Legal Voters of
      Right to Sign Initiative Petition.

3. Section 4098, Or. L., requiring signatures to an initiative or
referendum petition to be certified as genuine by a county clerk
from comparisons with signatures of registration cards, books, and
blanks on file in his office, is not unconstitutional as depriving un-
registered legal voters of the right to sign such petition, since
their signatures may be certified by notary public.

Statutes—Affidavit of Circulator of Initiative Petition not Sufficient
      to Enable Secretary of State to Count Signatures.

4. Under Section 4098, Or. L., relating to verification and certifi-
cation of the signatures to an initiative or referendum petition, the
affidavits of the circulators of such a petition do not sufficiently
prove the qualifications of the signers to enable the Secretary of
State to consider and count the signatures thereon.

Statutes—Initiative Petition cannot be Withdrawn from Office of
      Secretary of State Within Four Months Prior to Election to
      have Signatures Certified.

5. The requirement of Constitution, Article IV, Section 1, that
initiative petitions shall be filed four months before election, is
mandatory, and where petition was filed on the last day on which it
could be filed, it could not thereafter be withdrawn for the purpose
of having signatures certified as required by Section 4098, Or. L.

Statutes—Requirements of Initiative Petition Stated.

6. Under Section 4098, Or. L., an initiative petition is sufficient
if it has the requisite number of signatures certified and authenti-
cated, and if petition itself, the affidavit of the circulator, and the
certificate of the county clerk or the notary public substantially
conform to the statute.

Statutes—Secretary of State in Performance of Duties Pertaining
      to Initiative or Referendum Petition has No Discretion.

7. Under Section 4098, Or. L., the Secretary of State, in con-
sidering and counting signatures on an initiative or referendum
petition, or in refusing to consider and count any signature, and in
performance of duties pertaining thereto, has no discretion, and acts
in a purely ministerial capacity.

Statutes—Provision That Certificate to Initiative Petition shall be
      Prima Facie Evidence Held to Refer to Evidentiary Value to
      be Given by Courts.

8. Provision of Section 4098, Or. L., that a certificate on an in-
itiative or referendum petition shall be prima facie evidence refers

to evidentiary value to be given the certificate by the courts, and the Secretary of State, in counting signatures, is governed exclusively by what appears upon the face of the petition.

**Mandamus—Court Held Without Power to Inquire into Qualifications of Signers Whose Signatures to Initiative Petition were not Certified.**

9. Section 4099, Or. L., giving a court power by mandamus to require the Secretary of State to file an initiative or referendum petition, confers no powers additional to those conferred by Section 613, Or. L., so as to confer on the court power to inquire into qualifications of signers whose signatures were not certified as required by Section 4098.

ORIGINAL PROCEEDINGS IN MANDAMUS.

In Banc.

DEMURRER SUSTAINED AND WRIT DISMISSED.

For plaintiffs there was a brief and oral argument by *Mr. W. E. Richardson.*

For defendant there was a brief and oral argument by *Mr. I. H. Van Winkle,* Attorney General.

*W. C. Benbow,* on brief, *Amicus Curiae.*

RAND, J.—On July 3, 1924, an initiative petition, demanding that a proposed measure repealing the Public Service Commission law of the State of Oregon be submitted to the legal voters of the state for their adoption or rejection at the regular general election to be held on November 4, 1924, was presented to the Secretary of State for filing. To initiate this measure it was necessary, under the statute, that the petition should be filed not later than four months before the date of the election and that it should be signed by not less than 13,498 legal voters and that of these signatures to the petition not less than that number should be authenticated by the certificate of the county clerk or of a notary public in the manner directed by the statute. This statute, Section 4098,

Or. L., requires that each and every sheet of the petition containing signatures shall be verified on the face thereof by the affidavit of the person who circulated the sheet, to the effect that every person who signed the sheet signed his name in his presence, and that he believes that each has stated his name, post-office address and residence correctly and is a legal voter of the state and of the county named. The statute, in express terms, further provides that in addition to said affidavit the county clerk of each county in which such petition shall be signed shall compare the signatures of the electors signing the same with the signatures of the registration cards, books and blanks on file in his office and carefully examine the petition and attach to the sheets of the petition containing such signatures his certificate to the secretary of state certifying, in effect, that he had made said comparison and from the information he was able to obtain he believed that the signatures of the signers designated by him in his certificate are the genuine signatures of such electors, and as to the remainder of the signatures he believed that they are not genuine, except certain ones, naming them, whose names do not appear on the registration cards, books and blanks in his office. The statute further provides that this certificate of the county clerk shall be *prima facie* evidence of the facts stated therein and of the qualifications of the electors whose signatures are thus certified to be genuine, and directs that the Secretary of State shall consider and count only such signatures on such petitions as shall be so certified to be genuine by said county clerk. It then contains the proviso that the Secretary of State shall also consider and count such remaining signatures as shall be proved to be the genuine signatures of legal voters,

and directs that, to establish the fact that such signatures of the electors not so certified by the county clerk are the genuine signatures of legal voters, the official certificate of a notary public of the county in which the signer resides shall be required. The form of the certificate to be made by the notary public is prescribed by statute and provides that the notary public shall certify that he is personally acquainted with each of the following named electors, designating them by name, whose signatures are affixed to the annexed petition, and knows of his own knowledge that they are legal voters of the state and of the county written after their names in the petition, and that their residences and postoffice addresses are correctly stated therein.

1. The Constitution, Article IV, Section 1, directs that the Secretary of State, in submitting to the people petitions and orders for the initiative and for the referendum, "shall be guided by the general laws and the act submitting this amendment, until legislation shall be especially provided therefor." Chapter 13 of Title XXVIII, of which Section 4098, Or. L., is a part, was enacted to carry into effect the amendment relating to the initiative and referendum, and furnishes the sole and exclusive guide which the Secretary of State must follow in the performance of his official duties pertaining to the filing and submission of initiative and referendum petitions. Under the provisions of the statute above referred to it was the duty of the Secretary of State to consider and count only those signatures upon the petition which had been certified, either by some county clerk or by some notary public, and those not so certified the statute expressly prohibited him from either considering or counting.

The petition contained the signatures of 18,480 persons purporting to be legal voters of the state, all of which were certified by the affidavit of the circulator of the various sheets containing the signatures comprising the petition. Although 13,498 of these signatures were required to be certified either by the county clerk or by a notary public, only 10,247 thereof were authenticated in the manner directed by the statute. Because not so authenticated the Secretary of State refused to count the uncertified signatures or to file the petition. Upon his refusal to file the petition the relator filed a petition in this court for an alternative writ of *mandamus,* which was issued, and directed the Secretary of State to file the petition or to show cause for not having done so. The cause shown is by demurrer to the sufficiency of the alternative writ, which, on its face, shows the facts above stated. The affidavit of the circulator, unless accompanied by the certificate of a county clerk or of a notary public, under the clear, express, positive and mandatory directions of the statute, afforded no evidence to the Secretary of State upon which he was authorized to act. As to all signatures not so certified the Secretary of State was prohibited from considering or counting them. As a sufficient number of signatures was not certified to, the Secretary of State had no authority to file the petition or to submit the proposed measure to a vote of the people.

2. But it is contended upon the part of the relator that because the writ alleges that the petition was signed by more than 18,000 legal voters of the state, and since, for the purposes of the demurrer, the demurrer admits the truth of the allegation, the duty devolved upon the Secretary of State to disregard

these provisions of the statute and count all of said
signatures and file the petition and submit the meas-
ure to a vote of the people.   In support of this con-
tention it is argued that because the Constitution pro-
vides that not more than eight per cent of the legal
voters shall be required to propose an initiative
measure the provisions of the statute above referred
to are in violation of the constitutional provision and
consequently are of no force or effect.   The provi-
sions of the Constitution above referred to direct that
the Secretary of State and all other officers, in sub-
mitting measures to the people for their adoption or
rejection at the polls, shall be guided by the general
laws and the act submitting the amendment until legis-
lation shall be especially provided therefor.   This
provision conferred upon the legislative assembly the
power, and made it the duty of the legislature, to de-
termine what evidence should be required to establish
the qualifications of the signers to initiative petitions
and the genuineness of the signatures appearing
thereon.   The Constitution itself provided no means
by which those facts could be determined and con-
sequently the duty necessarily devolved upon the
legislature to provide a way by which those facts
could be determined.   The statute referred to pro-
vides the means for such determination, and, being
a proper exercise of the legislative power of the state,
is not subject to the objection urged.

3. It is also contended that because unregistered
legal voters of the state are entitled to sign initiative
petitions and to have their signatures counted (*State*
v. *Olcott,* 67 Or. 214, 220 (135 Pac. 95, 902), the stat-
ute is unconstitutional in that it deprives them of that
right, since, not being registered, it is impossible for
any county clerk of the state to make a comparison of

their signatures with anything on file in his office, and hence to certify their signatures. This objection overlooks the provisions of the statute which provide a method for the certification of all unregistered legal voters by a certificate of a notary public. If, therefore, there were any such unregistered voters who signed the petition in question the statute itself provided for their certification by a notary public, in which event their signatures could have been counted and their rights fully protected.

4. It is also contended that the affidavits of the circulators, without any other certification, furnished sufficient proof of the qualifications of the signers to enable the Secretary of State to consider and count all genuine signatures of legal voters upon the petition. This contention is contrary to the very letter and spirit of the statute and is equivalent to saying that the legislative assembly was without power to provide for other certification than merely the affidavit of the circulator of the petition.

5. It is alleged in the writ that on July 7, 1924, the relator demanded permission of the Secretary of State to withdraw the petition from the Secretary of State's office in order to enable him to secure from the county clerk of Multnomah County, Oregon, the county in which the signers resided, the certification of a sufficient number of the uncertified signatures appearing thereon to make the number certified sufficient to entitle the petition to be filed, and it is alleged that the refusal of the Secretary of State to comply with the demand entitles the relator to maintain the writ. Under the initiative amendment adopted by the people on June 2, 1902, Article IV, Section 1, the power to propose laws and amendments to the Constitution was reserved to the people. Among other things the amendment provides: "Initiative

petitions shall be filed with the Secretary of State not less than four months before the election at which they are to be voted upon.'' This provision of the Constitution is explicit and mandatory. A petition that is not a constitutional petition four months before the election cannot be made so within the four months' period next preceding the election by adding any affidavit or certificate to it. To permit this to be done would be in effect to defeat the constitutional requirement that the initiative petition must be filed not less than four months before the election. See *Questions and Answers,* 114 Me. 567 (95 Atl. 869), where it was held that the Governor was ''authorized to count the names only on such petitions as comply with the requirements of the Constitution and of those only such as were filed within 90 days after the recess of the legislature,'' and that petitions filed within the 90 days cannot be verified as to authenticity after the expiration of the 90-day period prescribed by the Constitution so as to entitle them to be counted. Under this authority names not certified on or before the day the petition was presented to the Secretary of State for filing could not be certified thereafter since that was the last day on which the petition could be filed as the election at which this petition was to be voted upon will be held on November 4, 1924. See, also, *In re Opinion of the Justices,* 116 Me. 557 (103 Atl. 761).

6–8. In the determination by the Secretary of State of whether a signature to an initiative or referendum petition shall be counted there are two essential requirements which must appear upon the face of the petition. The signature itself must be verified by the affidavit of the circulator and it must be authenticated by the certificate of either a county clerk or a notary

public. If so authenticated and if it has the requisite number of signatures so certified to, the petition is sufficient, if the petition itself and the affidavit of the circulator and the certificate of the county clerk or of the notary public, as the case may be, substantially conforms to the requirements of the statute. In considering and counting the signatures upon an initiative or referendum petition, or in refusing to consider and count any signature thereon, and in the performance of his duties pertaining thereto the Secretary of State acts purely in a ministerial capacity. He performs no judicial function and has no discretion. The statute itself contains the directions he must follow, and provides that he shall consider and count all signatures so authenticated and that he shall not count any signature not so authenticated. The statute also provides that the certificate shall be *prima facie* evidence of the facts stated therein and of the qualifications of the electors whose signatures are thus certified to be genuine. This has no reference to the duties of the Secretary of State, but refers only to the evidentiary value to be given to the certificate by the courts when the facts certified to are the subject of some appropriate judicial inquiry. The provisions of the statute defining the duties of the Secretary of State and directing what he shall do or not do in the given case are express, positive and mandatory and permit him to make no judicial investigation of the truth or falsity of any fact certified to. The Secretary of State, in counting the votes upon a petition, looks to the petition alone and is governed exclusively by what appears upon the face thereof. Although the statute makes the certification only *prima facie* evidence of the facts stated therein and of the qualifications of the electors whose signa-

tures are thus certified to be genuine, this applies only to the courts when the truth or the falsity of the matters certified to becomes the subject of a judicial inquiry in some appropriate proceeding. It has no application to the Secretary of State because, by the very terms of the statute, the Secretary of State is directed to count all signatures certified to and forbidden to count any signature not certified to.

9. The relator contends that in this proceeding the court possesses the power to inquire into and determine the qualifications of those signers whose signatures have not been certified; in other words, that in this proceeding the court can inquire into facts not appearing upon the face of the petition in order to compel the Secretary of State by *mandamus* to do an act which the law directs he shall not do. This contention is based upon the provisions of Section 4099, Or. L., which in part provides: "If the secretary of state shall refuse to accept and file any petition for the initiative or for the referendum any citizen may apply, within ten days after such refusal, to the Circuit Court for a writ of *mandamus* to compel him to do so. If it shall be decided by the court that such petition is legally sufficient, the secretary of state shall then file it, with a certified copy of the judgment attached thereto, as of the date on which it was originally offered for filing in his office." The provisions just quoted confer upon the court no new or additional jurisdiction. The powers of the court in a *mandamus* proceeding are limited and defined by Section 613, Or. L., which provides that a writ of *mandamus* "may be issued to any inferior court, corporation, board, officer, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station."

As the writ, upon its face, shows that the act which the relator seeks to compel the Secretary of State to do is one which the law directs he shall not do, it follows that the demurrer to the writ must be sustained and the writ be dismissed, and it is so ordered.

DEMURRER SUSTAINED AND WRIT DISMISSED.