445 P.2d 655

DREDGE MINING CONTROL–YES!, INC.,
a non profit Idaho corporation,
Plaintiff-Appellant,

v.

Pete T. CENARRUSA, Secretary of State,
Defendant-Respondent,
and
Idaho Mining Association, Intervenor-
Respondent.

No. 10305.

Supreme Court of Idaho.

Oct. 4, 1968.

W. Anthony Park, Boise, Scott W. Reed, Coeur d'Alene, for appellant.

Allan G. Shepard, Atty. Gen., and Daniel A. Slavin, Asst. Atty. Gen., for respondent Secretary of State.

Anderson, Kaufman, Anderson & Ringert, Boise, for intervenor-respondent.

Eberle & Berlin and Hawley, Troxell, Ennis & Hawley, Boise, amici curiae.

McFADDEN Justice.

Appellant Dredge Mining Control-Yes!, Inc., a non-profit Idaho corporation, instituted this action for a writ of mandate to compel respondent Pete T. Cenarrusa, Secretary of State, to file, certify and cause to be printed on the ballot for the November 1968 General Election an initiative proposal, sponsored by appellant. The proposal is entitled "Dredge Mining Regulation and Water and Land Preservation Initiative." The trial court issued an alternative writ of mandate requiring respondent Cenarrusa to certify the measure and cause the same to be printed on the general election ballot or show cause why he should not.

Respondent Idaho Mining Association, an unincorporated association of companies actually engaged in the mining industry

of this state, intervened in the action by motion granted by the trial court. Each respondent answered appellant's petition. The cause was tried by the court on stipulated facts, which the court adopted as its findings of fact. The trial court entered conclusions of law and its judgment discharging the alternate writ of mandate previously entered and enjoining respondent Cenarrusa from certifying or printing the initiative measure on the ballot, from which judgment plaintiff appealed.

The trial court concluded that appellant failed to file with respondent Secretary of State within the time allowed by law, certified signatures equal to ten per cent of the electors of the state based upon the aggregate vote cast for governor at the preceding general election, and hence the Secretary of State was precluded from ordering the initiative printed on the ballot for the 1968 general election. It is appellant's theory, however, that by reason of erroneous conclusions of law which are assigned as error this conclusion is incorrect.

The parties stipulated that the number of people voting for governor in 1966 was 252,591, and that 10% of that figure, the number of signatures required on the petition, was 25,260. It was also stipulated that petitions with 23,011 signatures were timely filed on July 5, with respondent Cenarrusa; "that 451 [additional signatures] arrived in the mail after July 5 but were postmarked on July 5; Approximately, but not less than 5,000 signatures were not certified by the clerks; All of the said 5,000 signatures were listed on the bottom part of the clerk's certification form."

Authority for use of the initiative by the electorate of this state is to be found in Idaho Constitution Article 3, § 1, and the provisions of Idaho Code Title 34, Chapter 18. The constitutional provision reads:

" * * *

"The people reserve to themselves the power to propose laws, and enact the same at the polls independent of the legislature. This power is known as the initiative, and legal voters may, under such conditions and in such manner as may be provided by acts of the legislature, initiate any desired legislation and cause the same to be submitted to the vote of the people at a general election for their approval or rejection provided that legislation thus submitted shall require the approval of a number of voters equal to a majority of the aggregate vote cast for the office of governor at such general election to be adopted." Idaho Const. Art. 3, § 1.

This constitutional provision was not a part of the Idaho Constitution as adopted in 1890, but came as an amendment proposed by the legislature in 1911 (S.L.1911, p. 785, S.J.R. No. 12), and was ratified by the voters at the general election in November 1912. The provision remained dormant until 1933, when the legislature enacted what is now I.C. Title 34, Chapter 18 (S.L.1933, Ch. 210).

The legislation enacted in 1933 pertaining to initiative elections provides the form for the petition and requires that an initiative petition must be filed not less than four months prior to the election at which it is to be voted upon. The act spells out the details of binding the petition, and requires that it have affixed "signatures of legal voters equal in number to not less than ten per cent (10%) of the electors of the state based upon the aggregate vote cast for governor at the general election next preceding the filing of such initiative * * * petition." I.C. § 34–1805. The act requires that each sheet of signatures be verified by the circulator, and also requires that the clerk of the district court of each county certify as to the signatures presented from the residents of his respective county. In the event the clerk of the district court should not certify any names submitted, provision is made for certification by a notary public. The act also provides that the Secretary of State shall consider and count all names signed on the petitions as certified by the clerks of the district courts and notaries public. The act provides the procedures for publishing the ballot, and

for voting and counting the results. Certain acts are declared unlawful and penalties are prescribed for commission of the proscribed acts.

In denying the appellant's claim, the trial court entered certain conclusions of law which are the basis of appellant's assignments of error. Among these is the conclusion entered by the trial court to the effect that for a person to be eligible to have his signature on the petition counted, it is necessary that such person not only meet the age and residence requirements to vote prescribed by the constitution, but also that he be registered in the manner prescribed by law. The appellant contends the trial court erred in this regard, asserting that the only requirement for signing an initiative petition is that the person in fact have the constitutional qualifications to vote, whether registered or not. Respondent Cenarrusa finds no objection to appellant's position on this point. He states that his responsibility is to accept all signatures certified to him by the county clerks, or, as to any rejected by the county clerks, all signatures then certified by a notary public.

However, respondent Idaho Mining Association seriously disputes appellant's contention in this regard. It is our conclusion that the trial court was correct in its conclusion. Idaho Const. Art. 3, § 1, in reserving to the people the right to initiate legislation, employs the term *"legal voters"* as those who may, under conditions and manner provided by legislation, initiate desired legislation. I.C. § 34–1814 states: "Every person who is a *qualified elector* of the state of Idaho may sign a petition for the * * * initiative for any measure which he is legally entitled to vote upon." (Emphasis added.) The form of the petition, as set out by the legislature (I.C. § 34–1801), is prefaced by a warning advising all that it is a felony for anyone to sign such petition " * * * when he is not a legal voter." By I.C. § 34–1807, the circulator of the petition must take an oath that he believes every signer of the petition is a "legal voter" of the state. By the same

section the clerk of the district court is required to examine the registration oaths and records in his office to determine the genuineness of the signature, and based thereon, certify to the signatures believed genuine. In the event a name is not so certified by a clerk of the court it may be certified by a notary public that the individual is a legal voter.

Although Idaho Const. Art. 3, § 1 employs the term "legal voters," Idaho Const. Art. 6, § 2 provides:

"Except as in this article otherwise provided, every male or female citizen of the United States, twenty-one years old, who has actually resided in this state or territory for six months, and in the county where he or she offers to vote, thirty days next preceding the day of election, if registered as provided by law, is a *qualified elector*; * * *." (Emphasis added.)

██ It is our conclusion that the legislature in its use of the term "legal voter" in the acts pertaining to the initiative measures, contemplated that the signers of the petition must be persons who are registered electors. Idaho Code § 34–1814 specifies who may sign an initiative petition, stating: "Every person who is a qualified elector of the state of Idaho may sign a petition for the * * * initiative for any measure which he is legally entitled to vote upon." In order to vote upon an initiative ballot, a person must have the qualifications of an elector and also be registered according to law. (Idaho Const. Art. 6, § 2) Therefore, in order that a person be qualified to sign the initiative petition he must be eligible to vote upon the measure, and hence must be registered. Moreover, unless a person is registered no record thereof will be available in the office of the clerk of the district court from which the clerk can determine, as required by I.C. § 34–1807, whether such person meets the qualifications of I.C. § 34–1814. This court in Kerley v. Wetherell, 61 Idaho 31, 96 P.2d 503 (1939), in considering the question whether signers of an initiative petition in the City

of Boise were required to be registered electors in the city, held that registration was required.

In its conclusions of law VI, the trial court stated:

"The Legislature is charged with the duty of establishing a procedure whereby the people can place initiative matters on the ballot. The legislative procedures outlined in Chapter 18 of Title 34, Idaho Code, are not unreasonable and must be complied with. While they may be cumbersome they are nevertheless workable and if any changes are required therein, they should be promulgated by the Legislature and not by the Court."

Appellant has assigned this conclusion as error and contends that the trial court should have concluded that the certification of signatures by the clerks of the various district courts was a practical impossibility under the Idaho voter registration laws. The Idaho initiative law is nearly identical to that enacted by the Oregon legislature. Appellant contends that the requirement for certification of signatures by clerks of the courts in Oregon is workable under its election and registration laws, but that the same procedure is unworkable in Idaho because of differences in statutory enactments concerning the registration of voters. Appellant seriously contends that as a practical matter, the clerks of the district courts do not have available in their files the oaths of voters signed at the time of registration, but that at best only typed lists of registered voters are available in those offices; that voters may register subsequent to the time of the preparation of the lists, and that a husband or a wife may register his spouse without the spouse's signature ever appearing on the list.

Respondent Cenarrusa as well as respondent Idaho Mining Association contend that the present act is reasonable in its provisions and that it is not unworkable, as demonstrated by the fact that it has been successfully utilized in the past. Indeed, the fact that appellant in this case presented 23,011 certified signatures reflects that this law, while restrictive and somewhat cumbersome, is not unworkable.

Idaho Const. Art. 3, § 1 reserves to the people the right to propose legislation by initiative, but only "under such conditions and in such manner as may be provided by acts of the legislature * * *." This court has specifically held in Johnson v. Diefendorf, 56 Idaho 620, 57 P.2d 1068 (1936), that the right of referendum (also provided in Idaho Const. Art. 3, § 1) is not self-executing, but rather its exercise is dependent upon the statutory scheme enacted by the legislature. The legislature has established such a scheme by enactment of I.C. Title 34, Chapter 18.

In I.C. § 34–1807, the legislature provided forms for verification by the circulators of the petition, and forms for certification by the clerk of the district court and also forms for certification by a notary public. The circulator is required to verify the signatures under oath, and the clerk must certify that each signature is genuine and appears on the voter registration list in his office. Signatures which the clerk fails to certify as genuine or as appearing on the registration lists may be established as names of legal voters before a notary public. Although appellant argues that the oath of the circulator and the attached warnings and the criminal penalties provided for unauthorized signing of an initiative petition adequately assure the validity of the affixed signatures, the legislature, in enacting I.C. § 34–1807, further required the certification by the clerk. The verification by the circulator of the petition is to the effect that the person signed in the circulator's presence and that the circulator "believes" the signer is a legal voter. Certification by the clerk or by the notary public, on the other hand, assures that the signer is a registered voter, which status is required to qualify as a signer of the petition.

Appellant attacks this statutory procedure as unworkable on the ground that the registration lists maintained in the clerks' offices are not up-to-date. Even though there may be persons eligible to sign the petition

whose names are not on the clerks' lists, the legislature has provided an alternative means of certification to deal with such situations. In the event a clerk refuses to certify a person's signature, that person can appear before a notary public who, after examining the person under oath, can certify that he is a qualified registered voter. I.C. § 34–1807.

Appellant also argues that it is impossible for the clerk to certify the signatures on the petition as genuine since he has only a typed list of names, rather than the original signatures, with which to compare them. In the present case, however, no signatures were rejected for lack of genuineness and that issue therefore is not before this court.

■ The statutory scheme set up by the legislature, although restrictive and perhaps cumbersome, is reasonable and workable. See: State v. Kozer, 105 Or. 509, 210 P. 172 (1922); Kellaher v. Kozer, 112 Or. 149, 228 P. 1086 (1924). Changes designed to make it less restrictive and burdensome in its operation are for the legislature to enact. See: Messerli v. Monarch Memory Gardens, Inc., 88 Idaho 88, 397 P.2d 34 (1964); Johnston v. Boise City, 87 Idaho 44, 390 P.2d 291 (1964); Berry v. Koehler, 84 Idaho 170, 369 P.2d 1010 (1961). The trial court did not err in its conclusion of law that the provisions of the law enacted by the legislature pertaining to the initiative procedures are reasonable.

This court having determined that the provisions of I.C. Title 34, Chapter 18 are not unreasonable, and the record reflecting that appellant did not file with respondent Cenarrusa petitions with the necessary number of certified signatures, the judgment of the trial court is affirmed.

■ Appellant has also assigned as error the trial court's conclusion of law to the effect that an initiative measure cannot be placed on the general election ballot in 1968, because 1968 is a non-gubernatorial election year. This assignment of error presents the issue whether the amendment of Idaho Const. Art. 4, § 1 ratified in the

general election of 1956, changing the term of office of the governor from two to four years, prohibits initiative measures being placed on the ballot at general elections when the governor is not being elected. Resolution of this issue involving interpretation of the effect of such constitutional amendment is not essential to the decision in this case, and therefore it will not be determined herein. State v. Clark, 88 Idaho 365, 399 P.2d 955 (1965); Poffenroth v. Culinary Workers Union Local No. 328, 71 Idaho 412, 232 P.2d 968 (1951); Terhaar v. Joint Class A. School District No. 241, 77 Idaho 112, 289 P.2d 623 (1955); State ex rel. Nielson v. City of Gooding, 75 Idaho 36, 266 P.2d 655 (1953); In re Allmon, 50 Idaho 223, 294 P. 528 (1930). Compare, Hammond v. Bingham, 83 Idaho 314, 362 P.2d 1078 (1961).

The judgment of the trial court is affirmed. No costs allowed.

SMITH, C. J., and TAYLOR, J., concur.

ANDERSON, District Judge (dissenting).

I dissent. All of the issues raised here revolve around essentially one question: Whether or not the signer of an initiative petition is required to be an actual registered voter.

This court has held in the case of Territory v. Evans, 2 Idaho 651, 23 P. 232, 7 L.R.A. 646 (1890), that registration is only for the purpose and as a precaution to prevent fraud in elections.

The petitions here in particular have been properly certified that the people signing the petition possess all of the qualifications of a qualified voter. There has been no allegation that there was any fraud and there has been no question raised that the people signing all of these petitions were not qualified voters.

In the absence of any showing of fraud, this court should not hold that the signer of an initiative petition should be an actual registered voter. To do so is depriving these people of a constitutional right upon a technicality which has no basis here. It

is not the registration of a voter that makes him qualify, his actual qualifications are the ones that count. Since the petitions have been certified that the people signing have the qualifications of a voter and no question has been raised in this regard, it is my feeling that the lower court was in error and that this court is in error in not reversing the lower court.

Furthermore, in the constitutional amendment providing for initiative it provides that legal voters are the ones who may sign such petitions. Without citing any authority whatsoever, the majority has held that a legal voter is a registered voter. Case after case throughout the United States has held that a legal voter is one who possesses the qualifications but need not be registered: Branstetter v. Heater, 269 Ky. 844, 108 S.W.2d 1040, (1937); In re Ray, 56 A.2d 761, 26 N.J.Misc. 56, (1947); State ex rel. Marcum v. Wayne County Court, 90 W.Va. 105, 110 S.E. 482 (1922); State v. Billups, 63 Or. 277, 127 P. 686, 48 L.R.A. 308 (1912); Woodward v. Barbur, 50 Or. 70, 116 P. 101 (1911); State ex rel. Westhues v. Sullivan, 283 Mo. 546, 224 S.W. 327 (1920); Benson v. Gillespie, 62 Colo. 206, 161 P. 295 (1916).

In the constitutional enactment providing for initiative the constitution provided that legal voters are the ones who may sign such petition. The legislature, in going beyond that requirement, violated the constitutional provision and any provision in the law that's enacted by the legislature requiring that the signers of the initiative be registered is invalid.

Again, it is stated with emphasis that the lower court should be reversed.

TAYLOR, Justice (concurring specially).

I concur in the majority opinion except that I would also resolve the issue as to whether an initiative measure may be submitted to the voters at a general election at which the office of governor is not to be filled. This issue was argued and submitted on this appeal. It being a question of great public importance, it should be resolved in order to avoid confusion in the future.

It is appellant's position that an initiative is proper at every biennial general election, regardless of whether a governor is to be elected. Although the respondent attorney general does not challenge this contention, it is attacked by respondent Idaho Mining Association and by amici curiae. Both argue that the constitution limits initiatives to election years in which the governor's office is to be filled.

Idaho Constitution, art. III, § 1, in reserving the initiative power to the people, provides that:

"* * * legal voters may, under such conditions and in such manner as may be provided by acts of the legislature, initiate any desired legislation and cause the same to be submitted to the vote of the people at a general election for their approval or rejection provided that legislation thus submitted shall require the approval of a number of voters equal to a majority of the aggregate vote cast for the office of governor at such general election to be adopted."

Appellant argues that the clause referring to the number of votes cast for governor is "directory" only; that it constitutes only a measure for determining the adoption or rejection of the initiative and does not purport to govern the time for holding an initiative. It is to be noted however, that the clause specifically refers to the votes cast for governor "at *such* general election," [emphasis added] clearly indicating that a governor is to be elected in the *same* general election. It is also noteworthy that the constitution authorizes the initiative at "a" general election, rather than at any general election, which indicates that an initiative need not be held available at all general elections; rather, the conclusion is unavoidable that the constitution as now amended provides for the submission of initiative measures only at gubernatorial general elections.

At the time the constitution was amended in 1912 to allow the initiative, a governor

was elected every two years. In 1944, art. 4, § 1, of the constitution was amended, extending the governor's term from two to four years.

Appellant contends that if the amendment extending the governor's term is construed as limiting initiatives to quadrennial elections, art. 3, § 1, must be regarded as amended by implication, likewise, to limit initiative measures to quadrennial elections. Such a construction, it is agreed, would violate art. 20, § 2, which prohibits a constitutional amendment from dealing with more than one subject. Therefore, the appellant argues, the provision allowing initiatives at every biennial election remains in effect. On the contrary, the amendment of art. 4, § 2, extending the governor's term to four years did not make that section inconsistent with art. 3, § 1, which remains unchanged;[2] it authorizes initiative proposals at "*a*" general election at which the governor is elected, albeit such elections are now less frequent. Amendment by implication is not favored, especially when constitutional provisions are involved, and can be justified only where the two provisions are irreconcilable.

Since the office of governor is not to be filled at the election to be held in November, 1968, the proposed initiative measure cannot be placed upon the ballot to be voted upon at that election.

McQUADE, Justice (dissenting).

The facts of this case are very simple and have been stipulated. For the purposes of the initiative, appellants were required to collect 25,260 signatures meeting the requirements of law. Appellants collected about 28,011 signatures in all, but 5,000 of these were not certified by the clerks of the district courts as valid under the law.

Thus, the Secretary of State refused to place appellants' proposal on the ballot.

The majority opinion concludes that signers of an initiative petition must be "registered electors." This adds but another term to those already present in the constitution and statutes relating to elections.

Idaho Const. art. 3, § 1 provides in part that "legal voters may, under such conditions and in such manner as may be provided by acts of the legislature, initiate any desired legislation and cause the same to be submitted to the vote of the people." It should be noted immediately that the phrase "under such conditions [etc.]" is placed between the words "may" and "initiate." The phrase therefore modifies the verb "may initiate" and does not in any way qualify the term "legal voters." The legislature was given no power to tamper with the term "legal voters" nor has the legislature attempted to add qualifications to such term.

Legislation prescribing the "conditions" and "manner" in which "legal voters" may initiate legislation is contained in I.C. §§ 34–1801 to 34–1822. The term "legal voter" is used in every relevant section,[1] while the term "elector" appears only in § 34–1807[2] and "qualified elector" appears only in § 34–1814.[3] This latter section provides: "Every person who is a qualified elector of the State of Idaho may sign a petition for the * * * initiative for any measure which he is legally entitled to vote upon." Again it should be immediately noted that the phrase, "which he is legally entitled to vote upon," refers to "measure," and its purpose does not necessarily indicate that the qualified elector must also be registered in order that he may actually vote, as the intervenor contends.

The majority equates the term "qualified elector" as it appears in I.C. § 34–1814

---

2. See H.J.R. No. 7, S.L.1933, pp. 473–4. The proposed amendment to eliminate the requirement that adoption of an initiative measure must be by vote equal to a majority of the vote cast for governor, was rejected by the voters at the general election in 1934.

1. "Legal voter" appears three times in § 34–1801, two times in 34–1805, three times in 34–1807, and one time in 34–1814.

2. Four times.

3. One time.

with the term "legal voter." This having been accomplished, the majority turns to the constitution art. 6, §§ 2 and 4, to find that a qualified elector must be registered. Hence, by the majority's reasoning, the legal voter must also be registered.

There are several flaws in this conclusion. The first is that the majority opinion ignores the substantial body of law which states that a legal voter is one possessing the substantive qualifications to be a voter, whether registered or not.[4] The term "legal voter," especially in the context of the initiative provisions where it is used in opposition to the narrower term "elector" or "qualified elector," is broad and encompasses persons meeting the requirements of citizenship, age and residence and lacking other substantive disabilities.

The second flaw of the majority's conclusion is in making registration a substantive qualification for voting. Assuming, as the majority opinion does, that a "legal voter" is equivalent to a "qualified elector," the further assertion that to be a "qualified elector" one must be registered does not withstand analysis. It is true that Idaho Const. art. 6, § 2 provides that every citizen of the United States over twenty-one who meets the residence requirements is "if registered as provided by law, a qualified elector." However, several cases decided by this Court have squarely held that "registration [was not] intended as one of the substantive qualifications of an elector. Registration was intended only as a regulation of the exercise of the right of suffrage, and not a qualification for such

right."[5] These holdings are in accord with the great weight of authority to the effect that registration is merely a mechanical adjunct to the electoral process whose function is limited to the ascertainment of whether persons in fact possess the substantive qualifications necessary to be a voter.[6] The purpose of registration is to protect the purity of the ballot box from fraud by inquiring whether voters actually possess the substantive qualifications to vote. The purpose of requiring that a voter be of a certain age and have a certain residence and citizenship and lack various disabilities is to insure that only those with a genuine stake in our society be permitted to vote. It thus does not comport with our law to reason that registration is a substantive qualification to vote.

Registration is the mechanical condition precedent to exercise of a qualified franchise. It is a convenient manner to check legal voters, but it is only one of various ways the legislature contemplated. The majority, by its holding that signers of a petition must be "registered electors," invalidates or renders superfluous that part of I.C. § 34–1807 which states that the Secretary of State "shall * * * count * * * signatures proved to be the genuine signatures of legal voters [by means of an appearance before a notary]." The legislature, by enacting this proviso, could not have meant to make registration the *sine qua non* of the signature validation process. By this provision the legislature recognized that a legal voter is not necesarily a registered voter.

---

4. 29 C.J.S. Elections §§ 1(7) and 1(8) (1965); Branstetter v. Heater et al., 269 Ky. 844, 108 S.W.2d 1040 (1937); In re Ray, 26 N.J.Misc. 56, 56 A.2d 761 (1947); State ex rel. Marcum v. Wayne County Court, 90 W.Va. 105, 110 S.E. 482 (1922); State v. Billups, 63 Or. 277, 127 P. 686 (1912); State ex rel. Westhues v. Sullivan, 283 Mo. 546, 224 S.W. 327 (1920); Benson v. Gillespie, 62 Colo. 206, 161 P. 295 (1916); Woodward v. Barbur, 59 Or. 70, 116 P. 101 (1911).

5. Wilson v. Bartlett, 7 Idaho 271 at 276, 62 P. 416 at 417 (1900), following Ter-

ritory v. Evans, 2 Idaho 651, 23 P. 232, 7 L.R.A. 646 (1890), and quoted with approval in Jaycox v. Varnum, 39 Idaho 78 at 84, 226 P. 285, at 286 (1924).

6. 29 C.J.S. Elections § 95 (1966); Minges v. Board of Trustees, 27 Cal.App. 15, 148 P. 816 (1915); Garrison v. Rourke, 32 Cal.2d 430, 196 P.2d 884 (1948); 37 Cal.Ops.Atty.Gen. 16 (1961); Earl v. Lewis, 28 Utah 116, 77 P. 235 (1904); Tennent v. Stacy, 48 Wash.2d 104, 291 P.2d 647 (1955); Cooley, Constitutional Limitations 906–907 (1903).

The intervenor also relies upon Idaho Const. art. 6, § 4, which provides that "the legislature may prescribe qualifications, limitations, and conditions for the right of suffrage, additional to those prescribed in this article * * *," for support in its assertion that the legislature could make registration a qualification for voting.[7] Without conceding such to be the case it is to be noted that the legislature has nonetheless not enacted such legislation. Qualifications of voters are set out in Chapter 4 of Title 34, I.C., wherein there are no qualifications other than citizenship, age, residence, and freedom from enumerated disabilities.[8]

I would submit, therefore, that the signers of an initiative petition need only be "legal voters" as is used in Idaho Const. art. 3, § 1, and as was defined at the time of its adoption and should not be enlarged upon.